ELI ROBIDOUX *vs.* ARTHUR O. CHARPENTIER.
ARTHUR CHARPENTIER *vs.* ELI ROBIDOUX.

FEBRUARY 25, 1960.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

FROST, J.   These are cross actions arising out of a lease of real property.   The first case is an action in assumpsit and the second case is an action of covenant.   They were tried together before a justice of the superior court sitting with a jury and resulted in a verdict for Arthur Charpentier in each case.   Motions for a new trial filed by Eli Robidoux were heard and denied.   The cases are here on his exceptions to the denial of such motions.   Hereafter the parties will be referred to as Robidoux and Charpentier respectively.

In 1957 Robidoux was the owner of approximately thirty-three acres of land on West Wrentham road in the town of Cumberland.   There were two buildings on the land, a larger building in which Robidoux lived at times and a smaller building which was about 175 feet distant.   The larger building contained a bar, a cafe and a lounge.   The water in this building came from a well.   The smaller building contained a snack bar and a kitchen where the food was prepared which was sold in the snack bar and cafe.   The well water used for cooking had to be brought from the cafe, but in the smaller building water was piped from a small pond on the premises.   This was used only for washing dishes and for sanitation.

The bar and cafe were known by the name of "Over the Rainbow Cafe" and had been operated by Robidoux or by his lessees over a period of several years.   Charpentier visited the premises several times and finally Robidoux and he entered into a written lease effective April 1, 1957 for a period of two years.   Under its terms the lessee was to pay $135 each week and was also required to make a deposit

with the lessor of $1,755, which was the amount of rent for the last thirteen weeks of the two-year period. The liquor license which Robidoux had was transferred to Charpentier and he began the operation of the cafe under the terms of the lease, paying to Robidoux the sum of $135 weekly.

In July, Charpentier was visited by a representative of the state department of health who inspected the premises. On July 17 notices entitled "Inspection Form For Eating and Drinking Establishments" were sent to both Charpentier and Robidoux. On the reverse side of the paper were several complaints which the department of health said would have to be remedied if Charpentier was to continue to operate the business for the preparation and selling of food. Several of these complaints were attended to and the situation remedied by Charpentier. One of the complaints was that water connected to the faucet was pumped directly from the pond. No change was made in this.

The next notice was a letter from the department of health, but this did not contain any order to cease operation. Still later another letter from the department of health stated that on or before August 8, 1957 defects must be corrected or disciplinary action would be taken. A final notice dated September 3, 1957 ordered Charpentier to cease operating the restaurant on September 9, 1957. Charpentier testified that after he received the first letter from the department he took it up with Robidoux who had received a like communication. Charpentier testified that Robidoux said, "Don't pay any attention to it and we probably won't hear from them again." This was later denied by Robidoux.

Charpentier made his last payment of rent on September 6 for the period ending September 1, 1957. He testified that he told Robidoux he could not operate without a kitchen and that Robidoux then told him to get out. Charpentier left on September 17, 1957.

Joseph Hebert testified that he was hired by Robidoux to dig a well and that he constructed it on August 15, 1957. Leo F. Salvas testified that he was a master plumber; that on August 22, 1957 he connected a well at "Over the Rainbow Cafe" and started the pump; that he let the water run from a faucet outside the building for four or five days to clear the well; and that he connected the well with the restaurant. Robidoux testified that he was unable to open the cafe until December 2, 1957 when a new liquor license was issued to him.

On September 23, 1957 he brought his action to recover for rental lost from the time Charpentier ceased to pay to early in December when Robidoux started to operate the bar and cafe. On September 27, 1957 Charpentier instituted his action to recover the amount which he had deposited with Robidoux.

The issue before the jury as stated by counsel for Robidoux in his brief was: "Whether or not Robidoux acted within a reasonable time to furnish an adequate supply of water for the premises under the terms of the lease and whether or not Charpentier breached the lease in question by vacating the premises on September 17, 1957 and by his refusal to pay rent after September 1, 1957."

The pertinent portions of the lease, namely, paragraph 3 (a) and paragraph 7, entered into by the parties are as follows:

3 (a) "That he will furnish and guarantee a continuous supply of water adequate to supply the needs of the Lessee in the operation of the businesses conducted on the demised premises, Provided, However, that such guarantee shall pertain to such operations as have been conducted by the Lessor during the two years preceding the execution of this Indenture and shall not be construed so as to bind the Lessor in the event that the Lessee shall make any changes or alterations in the operation of said business or businesses which shall appreciably increase the demand

for water, unless at the time such change or alteration is made, the Lessor agrees to become bound to guarantee such increased demand for water."

7 "In the event that the Lessor shall neglect or fail to perform any of the covenants, agreements or conditions herein contained on his part to be performed and observed and such default shall continue for a period of ten (10) days after the Lessee has notified the Lessor of such default, then the Lessee shall have the right to declare this Indenture terminated as of the date of default and shall immediately become entitled to the return of the sum of money paid by the Lessee to the Lessor in accordance with the provisions of Paragraph 1(a) herein, but the receipt of said sum by the Lessee shall in no way preclude the Lessee from pursuing any legal remedy accruing to the Lessee as a result of said default of the Lessor."

Upon a careful examination of the transcript there was, in our opinion, evidence on which the jury could find as it did. The trial justice had the opportunity of seeing and hearing the witnesses and we cannot say that he was clearly wrong in denying a new trial in each case. *Winslow* v. *Einhorn*, 62 R. I. 1.

In each case the exception of Eli Robidoux is overruled, and each case is remitted to the superior court for entry of judgment on the verdict.

*Frank O. Lind, Jr.,* for Eli Robidoux.

*Richard A. Baldwin,* for Arthur Charpentier.