192 A.2d 433 (1963)
Raymond J. PETTINE et ux.
v.
ZONING BOARD OF REVIEW OF THE CITY OF PROVIDENCE.
M. P. No. 1533.
Supreme Court of Rhode Island.
June 24, 1963.
John Tramonti, Jr., Providence, for petitioners.
William E. McCabe, City Solicitor, Harry Goldstein, Assistant City Solicitor, for City of Providence, Adler, Pollock & Sheehan, Bernard R. Pollock, Norman Jay Bolotow, Providence, for respondent.
*434 ROBERTS, Justice.
This petition for certiorari was brought to review the action of the zoning board of review of the city of Providence granting an application for an exception to the terms of the zoning ordinance under which the applicants are given permission to erect a six-story apartment building containing forty-six dwelling units on land that is presently zoned R-4 for multiple dwelling uses. Pursuant to the writ the respondent board certified the pertinent record to this court.
It appears therefrom that The Gordon School is the owner of two parcels of land located in the easterly part of the city of Providence, one of which comprises lots 533, 560, and 564 on assessor's plat 14. These three lots are contiguous and abut on the southerly side of Angell street, extending southerly to the northerly line of Medway street. The other parcel is a single lot numbered 432 on assessor's plat 14 and abuts on the southerly line of Medway street. On August 22, 1962 The Gordon School joined with Embassy House, Inc. in filing the instant application for permission to erect a high-rise apartment house, so called, on the Angell street parcel and to use the Medway street parcel for the parking of automobiles by the tenants of the proposed apartment building.
The application discloses that the applicants sought relief specifically by way of a special exception provided for in sec. 27 (7) of the ordinance which relates to structures designed to provide for group housing. Section 27 (7) contains a formula which, when applied in appropriate cases relating to group housing, permits a reduction of 20 per cent in the requirements of the ordinance as to the minimum land area per dwelling unit in the zone where it is proposed to locate group housing. By virtue of an application of that formula in the instant case the number of dwelling units that may be provided in the proposed building would be increased from twenty-nine to forty-six. It further appears from the application that relief was sought also from ordinance provisions relating to height limitations and to lot lines, so called.
On September 25, 1962 the board held a public hearing on the application after viewing the premises. Thereafter, on December 7, 1962, the application was again considered by the board, and affirmative action thereon was approved by a vote of 4 to 1. The board then adopted resolution No. 2613 dated December 7, 1962, the pertinent portion thereof reading as follows: "That the Zoning Board of Review does hereby make an exception or variation of Section 27, paragraphs 7 (a) and 7 (b), Section 44 B-1 and Section 44-C paragraphs 1, 3 and 4 under the Zoning Ordinance and does hereby grant the application of Embassy House, Inc., Applicant and the Gordon School, Owner, substantially in accordance with the plans, plot plan and parking plan filed with said Board."
The resolution discloses that the board intended to grant the applicants the special exception relating to group housing as provided in sec. 27 (7) of the ordinance and to relax the height limitation and lot-line restrictions so as to conform with plans provided by the applicants. The resolution does not in express terms or by necessary implication grant a variance.
The exception that the board intended to make is one of several set out in sec. 27 of the ordinance permitting specific uses to be made of land located in any zone. The pertinent portion of that section reads as follows: "The following special exceptions may be permitted in any zone where such uses are deemed essential or desirable to the public convenience or welfare and are in harmony with the various elements or objectives of the master plan * * * 7. Group Housing." This provision of the ordinance vests the board with authority to permit group housing in any zone subject to compliance with the conditions prescribed therein. In the instant case the board, purporting to act under that authority, gave these applicants permission to erect the *435 proposed high-rise apartment building in an R-4 zone on the ground that the proposed building constitutes group housing within the purview of the exception.
The petitioners contend, however, that the proposed high-rise apartment house, while it is a building providing for multiple housing, does not constitute group housing within the purview of the exception set out in sec. 27 (7). We are of the opinion that this is a meritorious contention. The action of the board here clearly was based upon a misconception of the purpose for which the exception is provided by the ordinance, that is, to provide for multiple housing through group housing primarily by permitting a reduction in the minimum area requirements per dwelling unit.
The applicants contend, however, that the exception by its terms does not preclude its application to multiple housing provided for in a single building or, as we understand them, that a single building providing for multiple housing is group housing as contemplated by the special exception. In support of this argument they direct our attention to the phraseology of sec. 27 (7) (a) wherein a reference is made to "a group of dwellings designed as a unit," asserting that this brings within the purview of group housing multiple housing provided for in a single structure. We cannot agree that the language of said sec. 27 (7) (a) referred to above was ever intended to constitute a definition of the words "group housing." On the contrary, we are of the opinion that this language was intended to establish the make-up of a single lot within the purview of subpar. (a) of sec. 27 (7). The question of whether the two parcels here owned by The Gordon School should be deemed to constitute one lot will not be considered by us because we take the view that the proposed building in the instant case is not group housing within the purview of the exception.
Despite the absence of a definition of group housing in the ordinance, an analysis of the provisions thereof warrants a conclusion that multiple housing provided for in a single structure was not intended to be group housing within the purview of the special exception. First, there is language in the exception that is persuasive that group housing as contemplated therein is multiple housing provided for in two or more buildings. In subpar. (b) of the exception the board is given authority to reduce the minimum area requirements for each dwelling unit when the multiple housing proposed is provided for through group housing. This reduction in the land area requirements permitting an increased density of use in our opinion is the primary purpose for which the exception was enacted. The ordinance reads in this respect: "Where group housing consists of two or more buildings * * *." It is our opinion that this language clearly reveals a legislative intent to permit this reduction in land area requirements under the exception only in those cases in which the group housing proposed consists of two or more buildings.
Our conclusion in this respect is further strengthened by reference to the provisions of sec. 27 of the ordinance that is contained in sec. 26 (4) thereof. The language of sec. 26 (4) to which we refer reads: "Row dwellings or a unit group of dwellings as referred to in Section 27, may be considered as one main residential building." We are persuaded that when sec. 27 (7) is read in the light of the language set out in sec. 26 (4), it is clear that the legislature contemplated that the group housing provided for in said sec. 27 (7) was to be multiple housing provided for in two or more buildings.
We attach further significance to the fact that the local legislature enacted a special exception designed to permit a relaxation of the ordinance restrictions on the use of land for multiple housing when such housing is to be provided for through group housing. The exception contemplates the consolidation of parcels of land to one lot and on the basis of that consolidation permits *436 a reduction in the requirements for minimum lot areas per dwelling unit. The enactment of the exception appears to rest upon a distinction between multiple housing contained in the conventional type of apartment building already provided for in sec. 44 and such use when provided for in a group of buildings.
We are of the opinion then that multiple housing provided for through the erection of a single apartment building such as is proposed here is not the group housing contemplated by sec. 27 (7). We are therefore constrained to conclude that the board acted in excess of its authority and in an abuse of its discretion in granting to these applicants the special exception provided for in the ordinance. Because we take this view it will not be necessary for us to consider the contention of petitioners that the action of the board in granting this exception was illegal as an attempted amendment of the pertinent provisions of the ordinance.
We turn to a consideration of the applicants' contention that the board also granted them a variance from the literal application of the terms of the ordinance relating to multiple housing. This contention is based upon a finding that the record discloses the board made at its meeting on December 7, 1962 prior to the taking of its vote to act affirmatively upon the application. The language set out in the record upon which the applicants rely in this respect reads: "* * * the literal enforcement of the Zoning Ordinance would create an unnecessary and undue hardship upon the applicant." The applicants contend that implicit in this finding is a conclusion that a literal enforcement of the ordinance provisions would deprive them of all beneficial use of the land and that it follows necessarily therefrom that the board intended to grant them a variance.
We are reluctant to assume that the board intended to grant a variance in this case in view of the express provisions of the resolution adopted on December 10, 1962 making a special exception to the terms of the ordinance as provided for in sec. 27 (7). The applicants argue, in effect, that the board, having intended by its resolution to give them permission to make a particular use of the land under a special exception, then found that under the ordinance providing for such exception they are deprived of any beneficial use of their land and therefore entitled to a variance. If we assume without deciding that the board did intend to grant a variance as well as an exception, we are of the opinion that such action avails the applicants nothing, there being in the record no legally competent evidence upon which the finding of unnecessary hardship could be based.
This court has said repeatedly that absent some compelling reason therefor it will not weigh the evidence upon which a zoning board of review based a decision on an application for an exception or a variance. We will, however, examine such a record for the purpose of ascertaining whether its action is supported by some legal evidence contained therein. If the record discloses such legal evidence, this court will not disturb that decision. Hazen v. Zoning Board of Review, 90 R.I. 108, 155 A.2d 333.
It is settled that a zoning board of review, when exercising its fact-finding power for the purpose of taking action in its quasi-judicial capacity, must act on the basis of facts lawfully ascertained. In Robinson v. Town Council, 60 R.I. 422, 199 A. 308, this court held that these boards are required to ascertain the facts in such circumstances on the basis of reasonably competent testimony or of evidence acquired by other proper means. We were referring to this rule when we said in Zimarino v. Zoning Board of Review, 95 R.I. 383, 187 A.2d 259, 261: "They may lawfully ascertain such facts from any reasonably competent evidence, that is, any evidence that is not incompetent by reason of being devoid of probative force as to the pertinent issues. The phrase `other proper means' to which this court referred in Robinson v. *437 Town Council, supra, includes knowledge acquired by inspections as well as that presumed to be possessed by members of such boards. This evidence constitutes the `legal evidence' to which we referred in Hazen v. Zoning Board of Review, supra, * * *." After having closely scrutinized the record in the instant case we are persuaded that there is therein no legal evidence upon which this board could act judicially to find unnecessary hardship.
There is in the record testimony in the form of statements made by counsel for the applicants that enforcement of the ordinance provisions would result in unnecessary hardship to this owner. Such conclusions stated by a witness without supporting evidence and without the qualification of the witness as an expert have been rejected by this court as being without probative force. Kelly v. Zoning Board of Review, 94 R.I. 298, 180 A.2d 319. Discussions by counsel for the applicants concerning the effect of a relaxation of the ordinance on the rate of return on the investment, in our opinion, did not tend to establish that an enforcement thereof would deprive the owner of all beneficial use of his land.
Neither does the record disclose that the board reached its decision on the basis of evidence obtained through its inspection of the premises or by reason of the special knowledge it is presumed to possess with respect to matters peculiarly related to the administration of the zoning ordinance. It is settled that this court will presume that boards may obtain evidence upon which to act by the acquisition of knowledge on a view or by reason of its presumed expertise. This court will not, however, assume that the board reached its decision on the basis of such evidence unless the record discloses that its action was based thereon. Kelly v. Zoning Board of Review, supra. In brief, we are of the opinion that there is in this record no evidence upon which this board would be warranted in finding unnecessary hardship and pursuant thereto granting a variance if, in fact, it intended to do so at all.
The petition for certiorari is granted, the decision of the board is quashed, and the record certified to this court is ordered returned to the respondent zoning board.
JOSLIN, J., not participating.
CONDON, Chief Justice (dissenting).
I dissent because I disagree with the court's construction of sec. 27 (7) of the ordinance pertaining to group housing.