238 A.2d 353.

WESTMINSTER CORPORATION *vs.*
ZONING BOARD OF REVIEW OF THE CITY OF PROVIDENCE.

WESTMINSTER CORPORATION *vs.*
ZONING BOARD OF REVIEW OF THE CITY OF PROVIDENCE.

PROVIDENCE BUILDING COMPANY *vs.*
ZONING BOARD OF REVIEW OF THE CITY OF PROVIDENCE.

PROVIDENCE BUILDING COMPANY *vs.*
ZONING BOARD OF REVIEW OF THE CITY OF PROVIDENCE.

FEBRUARY 6, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

382.

ROBERTS, C. J. These petitions for certiorari were brought to review two decisions of the zoning board of review of the city of Providence wherein permission was granted for

the erection of a twenty-three-story office building 273 feet in height upon land presently zoned C-3 downtown commercial use. In such district an office building up to 300 feet in height is a permitted use subject to certain setback requirements provided for in sec. 53 (B) (1) of the zoning ordinance. The applicants were granted permission to erect a building 273 feet in height without full compliance with the setback requirements or with the off-street parking and loading platform provisions contained in secs. 24 (C) (2) (d) and 24 (D) of said ordinance. The writs issued, and pursuant thereto the respondent board has returned to this court the pertinent records in these cases.

The records disclose that on March 28, 1967, The Narragansett Electric Company of Providence, Rhode Island, owner of a tract of land comprising lots 68 and 69 on assessor's plat 20 and bounded by Weybosset street, Exchange street, Dyer street, Gerry Gangway, and Westminster street, was joined by First Hartford Realty Corporation of Manchester, Connecticut, proposed purchaser of such tract, in an application seeking relief from the provisions of sec. 53 (B) (1) of the zoning ordinance. Said section provides for the above-mentioned height restriction and further provides "* * * that where any building or structure exceeds a height of 6 stories or 75 feet each part thereof above 6 stories or 75 feet shall be set back from the required yard lines, or lot lines where no yards are required, at least one foot for each 3 feet above 6 stories or 75 feet." A plot plan filed with the record discloses that there will be substantial setbacks from the property line along Westminster and Weybosset streets and along Dyer street. It is conceded that these setbacks do not constitute compliance in full with the ordinance provisions above quoted.

A hearing on this application was held on April 25, 1967, and at that time the applicants moved for permission to amend their application and to seek therein relief from the

provisions of secs. 24 (C) (2) (d) and 24 (D) of the ordinance. At the same time they asked for permission either to present evidence on the amended application at the hearing then under way or, in the alternative, to file a new application for such additional relief to be heard at a subsequent hearing. Objection was made to the proposal to adduce evidence relative to the amendment at the hearing then being conducted, and as a consequence thereof, on April 27 the applicants filed a new application specifically seeking relief from the provisions of sec. 24 (C) (2) (d) and sec. 24 (D).

Section 24 (C) (2) (d) establishes the requirements for the parking of motor vehicles and provides that in the case of business or commercial buildings having a floor area of 1,500 square feet or more "* * *" at least one parking space for every 500 square feet of gross floor area in said buildings or structures * * *" must be provided. The applicants note that the pertinent floor area would approximate 192,000 square feet and thus require 400 parking spaces for motor vehicles. The application points out that they desire relief from this regulatory provision to the extent of being permitted to provide a total of 98 parking spaces. Section 24 (D) relates to off-street loading space and, in substance, requires a loading space 10 feet by 25 feet for every 20,000 square feet of floor area in excess of 4,000 square feet. The applicants note that a literal reading of this provision would require 14 such loading spaces, and ask relief therefrom.

The board conducted a second hearing on May 16, 1967, at which evidence was adduced on the question of granting relief from the off-street parking and off-street loading provisions of the ordinance. It appears from the record that this hearing was the subject matter of a legal notice published in a local newspaper on May 6, which specifically informed the public that a petition was pending and would be heard on the question of relieving the applicants of the

provisions of secs. 24 (C) (2) (d) and 24 (D) of the ordinance. It might be well to note at this point that the record discloses that the board made an inspection of the premises under consideration, noting its location and the nature of surrounding buildings and the uses to which those buildings were put.

The board rendered its decision on these applications on July 24, 1967, in its Resolution No. 3267. We will consider first whether the decision granting relief from the provisions of sec. 53 (B) (1) prescribing the requirements for setbacks constituted an abuse of the board's discretion as is urged by petitioners here. The board found that compliance with the provisions of sec. 53 (B) (1) "* * * will create an unnecessary hardship that would constitute more than mere inconvenience but rather would have an adverse effect on petitioners and substantially deprive petitioners of beneficial use of the land." The board further found that "* * * there is no use other than as an office building, based on land value, that the land could be properly put to" and that "* * * twenty-three floors were needed or an office building could not be built, and that the proposed structure with the setback variation is the only kind of building financially feasible." The board then went on in express terms to vary the use district regulations under the zoning ordinance by permitting the erection of a twenty-three-story building without full compliance with the provisions of sec. 53 (B) (1).

It is clear that the applicants seek relief from ordinance provisions regulatory of the permitted use of land. They do not seek a true variance, so called, pursuant to which they could make a use of the land that is not a permitted use under the terms of the ordinance. We have distinguished repeatedly between ordinance restrictions on the basic use of land and those that regulate the manner in which a permitted use may be made of the land. Where an owner cannot make any permitted use of his land, the authority of

a zoning board to grant a variance is conferred by G. L. 1956, §45-24-19 (c), and is conditioned primarily upon a showing by the applicant that a literal enforcement of the pertinent terms of the ordinance will result in unnecessary hardship. We have construed the term "unnecessary hardship" to mean that such a literal enforcement of the ordinance restrictions would deprive the owner of all beneficial use of his land. *Denton* v. *Zoning Board of Review*, 86 R. I. 219, 133 A.2d 718.

However, in *Viti* v. *Zoning Board of Review*, 92 R. I. 59, 65, 166 A.2d 211, 213, we distinguished between the true variance and applications seeking permission to deviate from the provisions of a zoning ordinance that merely regulate the manner in which a use permitted under the terms thereof may be implemented by the owner. In that case we said: "Although the side and rear yard regulations are contained in the zoning ordinance, * * * such regulations as are here considered do not constitute 'zoning' as that term is generally construed. * * * They are regulations governing a permitted use as distinguished from the limitations on the use which one may make of his property."

In *Viti* we held that where an owner seeks to vary the terms of ordinance provisions merely regulatory of the manner in which a permitted use may be implemented, he is not required to prove, in order to obtain such relief, that a literal enforcement of the ordinance would deprive him of all beneficial use of his land, nor is the authority of the board to grant such relief conditioned upon a finding by the board that a grant of the relief requested will serve the convenience or welfare of the public. That is now the settled rule in this state.

Subsequently we attempted to illumine the rule laid down in *Viti* when in *Reynolds* v. *Zoning Board of Review*, 96 R. I. 340, 191 A.2d 350, we said that there is a fundamental difference between zoning enactments that classify land

uses and thereby designate the uses to which land may be put and the enactment of rules which are intended only to prescribe the manner in which such uses as are permitted may be exercised. We then went on to say, 96 R. I. 342, 191 A.2d 352: "It cannot be argued reasonably, except in some peculiar circumstance, that a provision of the zoning ordinance that merely prescribes lot-line restrictions must be found to be confiscatory by a board of review in order to give the owner relief therefrom. We are of the opinion that to impose a burden on a landowner of proving that degree of unnecessary hardship merely to obtain relief from such lot-line restrictions would be to make an extremely illiberal application of the ordinance."

Shortly after our opinion in *Reynolds,* we indicated the limitations on the application of the *Viti* rule in *H. J. Bernard Realty Co.* v. *Zoning Board of Review,* 96 R. I. 390, 393, 192 A.2d 8, 11, where we said, in part: "We further held that in seeking a variance or exception from such regulations a property owner was not required to prove a loss of all beneficial use. We did not hold, however, as petitioner seems to infer, that on application for such relief a property owner need show no more than that the varying of the proscribed regulation is for him a preferable alternative to compliance therewith, where compliance might be had, albeit with some inconvenience. There must be a showing of an adverse effect amounting to more than mere inconvenience."

It appears then that the test to be derived—from these cases of applications for relief from provisions of an ordinance that merely regulate the manner in which a permitted use may be utilized—is whether a literal enforcement thereof would have an effect so adverse as to preclude the full enjoyment of the permitted use. Entitlement to relief in these cases depends upon a showing that the adverse effect of a literal enforcement of the ordinance precluding full enjoyment of the permitted use amounts to more than mere

inconvenience. In other words, a showing that full enjoyment of the permitted use is impaired by matters which merely inconvenience the owner in such enjoyment is insufficient to justify a grant of relief under this rule. See *Travers* v. *Zoning Board of Review*, 101 R. I. 510, 225 A.2d 222; *Gardiner* v. *Zoning Board of Review*, 101 R. I. 681, 226 A.2d 698.

The question then is whether there is in this record competent evidence to sustain the finding that full compliance with the setback provisions of the ordinance would constitute more than mere inconvenience adversely affecting full enjoyment of the permitted use. There is, in our opinion. In this respect we direct attention to our settled rule that this court, when reviewing a decision of a zoning board of review, does not weigh the evidence adduced before the board. Absent some peculiar circumstances, we merely examine the record to determine whether it contains any legally competent evidence that supports the decision. *Laudati* v. *Zoning Board of Review*, 91 R. I. 116, 161 A.2d 198.

Without intending to extend this opinion by a protracted discussion of such evidence, we note that one Jacob Gans, an architect testifying as an expert, stated that full compliance with the setback provisions of the ordinance would make the creation of rentable office space impossible beyond twelve stories. Sidney Stone, who testified to his experience as a rental agent for the applicant building company, testified, in substance, that a limitation of the building to twelve stories would make its construction financially impossible, as the proposition would not be attractive to investors. Two local realtors testifying as experts stated that a twenty-three-story office building, as planned, is the only building that could be constructed with any assurance of financial success and that no economically sound building project could be carried out in the area if there was an insistence on full compliance with the setback requirements.

We cannot say then that the grant of the relief was arbitrary and constituted an abuse of discretion, there being competent evidence from which the board properly might find, as it did, that relief from the setback requirement was reasonably necessary for a full enjoyment of the permitted use. Compare *H. J. Bernard Realty Co.* v. *Zoning Board of Review, supra.*

The petitioners contend that the decision was arbitrary in that the board disregarded other permitted uses that could be made of the land under the terms of the ordinance. They contend that this negates the applicants' argument that full compliance with the setback requirements would preclude them from having reasonably full enjoyment of the permitted use. The issue, however, is whether the applicants are entitled, under the terms of the ordinance, to enjoy the permitted use prescribed therein, and for which they have applied, whether or not other permitted uses are available. The petitioners' argument, as we understand it, is that because there are other permitted uses that could be made of the land––uses which do not appear to require a variance— the board abused its discretion in applying the rule laid down in *Viti.*

This argument misconceives the character of a use expressly permitted by the terms of a zoning ordinance. A use expressly permitted by the terms of an ordinance is available to a landowner as a matter of right and can be impaired lawfully only when the restriction regulating it bears a reasonable relationship to the objectives of the police power. The very thrust of the rule laid down in *Viti* is that an owner is not to be deprived of the enjoyment of such a permitted use where it is made to appear that the regulatory restriction adversely affects his full enjoyment of that use.

The applicants in the instant case seek a use specifically permitted by the terms of the ordinance, and they have established that a literal enforcement of the terms of the ordi-

nance which regulate the manner in which that use may be had has the effect of depriving them of reasonably full enjoyment of the permitted use. In such situation they are entitled to relief upon the establishment of the necessary ground therefor, and this whether or not the ordinance provides for other permitted uses.

We turn next to petitioners' contention that the board abused its discretion in granting relief from the provisions of sec. 24 (C) (2) (d) of the ordinance establishing requirements for off-street parking and from the provisions of sec. 24 (D) which establish the requirements for off-street loading space within the use district.

As we have already noted, the provisions of sec. 24 (C) (2) (d) require in any building having a floor area of 1,500 square feet or more "* * * at least one parking space for every 500 square feet of gross floor area in said buildings * * *." This would require approximately 400 off-street parking spaces for the proposed twenty-three-story building. Section 24 (C) (3) of the ordinance provides for a modification of the off-street parking requirements by the board "* * * where the conditions or circumstances provide substantial reasons to justify such action."

There is evidence in the record tending to prove that to provide this total amount of off-street parking spaces in the circumstances would require a use of five or six stories of the building for parking purposes. There is likewise evidence in the record that the manner in which the parking facility would be operated would not interrupt the orderly flow of traffic in the vicinity nor would it create any traffic congestion.

It is to be noted also that sec. 24 (D) of the ordinance requires certain types of commercial buildings to be provided with a loading space 10 feet by 25 feet in dimension for every 20,000 square feet of floor area in a proposed building. Provision is also made in that section for the modification

of the requirements for loading areas, which reads, in pertinent part: "These requirements may, upon appeal, be increased, modified or waived by the Board where the conditions or circumstances justify such action * * *." There is evidence in the record that compliance with the ordinance requirements for loading areas would require a total of 14 such loading areas and that this would require a use of practically all of the building frontage. There is further evidence that the applicants have proposed to widen Gerry Gangway from 6 feet to 11 feet so as to set the stage for a loading area that, according to expert testimony, would be adequate in size to service the particular uses of this building.

While the board dealt with these ordinance provisions as if they established exceptions, it is our opinion that they are not true exceptions. The office of the true exception in the context of zoning is to establish within the ordinance conditionally permitted uses. In other words, where a use is sought that is conditionally permitted, sec. 92 of the ordinance requires proof that the public welfare and convenience will be substantially served or that the appropriate use of neighboring property will not be substantially injured as a condition precedent to the grant of a conditionally permitted use.

In the instant case, however, provisions of the ordinance above referred to do not purport to establish conditionally permitted uses and, therefore, are not exceptions within the concept of zoning. They are rather ordinance provisions regulating permitted uses, and a board of review is therein given authority to modify the adverse effects of such ordinance provisions as they regulate accessory uses of the property. As such, they are not subject to the provisions of sec. 92. The availability thereof to an applicant is controlled entirely by the provisions contained therein.

In each of the sections above referred to, authority is conferred upon the board of review to modify the restrictions set out therein when "* * * conditions or circumstances provide substantial reasons * * *" therefor in the case of sec. 24 (C) (3) or "* * * conditions or circumstances justify such action * * *" in the case of sec. 24 (D). While there is some difference in the language employed by the legislature in conferring this authority on the board of review, it is, in our opinion, in the interests of simplified administration of the ordinance that the language be construed as establishing a similar test, i.e., that for good cause shown the board may modify. We cannot attribute to the legislature an intent to complicate the administration of the ordinance by requiring tests of different quality in the determination of whether these restrictions may be modified.

When so construed, it is our opinion that it is within the discretion of a zoning board of review to modify the restrictions contained in either section when it appears that conditions or circumstances exist that would preclude full enjoyment of the permitted use if the ordinance restrictions were literally enforced. In short, when the literal enforcement of the pertinent ordinance provisions would preclude a reasonably full enjoyment of the permitted use of the land, and relief, if granted, would not be contrary to those public interests which justify an exercise of the police power, a grant of such relief would not be an abuse of the board's discretion.

We think that the evidence in this case demonstrates an overriding consideration that equates with good cause. If the requirements of these provisions of the ordinance are literally enforced, their effect would be substantially confiscatory. It is obvious that were such literal enforcement made, the requirement for 400 off-street parking spaces would pre-empt a substantial portion of space in the building for parking purposes. So too, the requirement for 14

loading areas would be confiscatory. The effect of this on a reasonably full enjoyment of the permitted use is clear. We are unable to agree that the board acted arbitrarily or abused its discretion in granting relief from the provisions of sec. 24 (C) (2) (d) and sec. 24 (D).

The petitioners contend that the board erred in its procedural rulings and that, therefore, the grant of relief amounted to an abuse of discretion. It is our opinion that there is little or no merit in these contentions as a whole. It appears, however, that the board in this case denied counsel for the parties the right to cross-examine the witnesses adduced by opposing parties. This is a practice with which we have long been dissatisfied.

In *Colagiovanni* v. *Zoning Board of Review,* 90 R. I. 329, 158 A.2d 158, this question was before us. There we held that, although zoning boards perform quasi-judicial duties, the recognized informal character of such hearings did not require that they be conducted as are hearings before a duly established court of law. We went on to say, 90 R. I. 335, 158 A.2d 162: "Although interested persons have a right to be heard in zoning hearings in accordance with rules and regulations lawfully adopted and impartially applied by such boards for the conduct of their hearings, there is nothing in the law entitling such persons to cross-examine opposing witnesses as a matter of right."

However, in *Zimarino* v. *Zoning Board of Review,* 95 R. I. 383, 187 A.2d 259, this question was again raised and again we noted that while these boards are administrative bodies when acting in their quasi-judicial capacity, and must so act on the basis of facts lawfully ascertained, this does not mean that such boards are required to conduct these hearings in strict compliance with the rules of procedure that apply in the conduct of judicial trials or to strictly observe the rules of evidence. In *Zimarino,* however, as in the instant case, the question to which we addressed ourselves was

whether the refusal to permit the cross-examination of certain witnesses deprived a party of a complete and impartial hearing in that it prevented him from introducing competent, relevant evidence on the issues raised. We noted, however, that the record did not disclose any situation in which the party was in fact precluded from presenting competent evidence by any ruling of the board, the record there disclosing only that the chairman of the board stated that cross-examination was not permitted. We went on to say, however, 95 R. I. 388, 187 A.2d 262: "The interest of justice might well be better served if some reasonable cross-examination were permitted, particularly if it were to be conducted by legal counsel presumably skilled in that art. However, we cannot say that a refusal to permit formal cross-examination, applied to all parties to a hearing, in and of itself will operate so as to preclude the production of competent, relevant evidence on the issues raised at such hearing." We direct attention to the position we took in *Zimarino* and to our suggestion that cross-examination be permitted in appropriate cases.

The petitions for certiorari are denied and dismissed, the decisions of the respondent board are affirmed, the writs heretofore issued are quashed, and the records in the cases which have been certified to this court are ordered returned to the respondent board.

JOSLIN, J., dissenting. *Viti* v. *Zoning Board of Review*, 92 R. I. 59, 166 A.2d 211 (1960), and the cases which follow it, permit a *deviation*—a zoning term which has its origin in those cases—from the area restrictions[1] of a zoning ordinance whenever their literal enforcement would have so

---

[1]The term "area restrictions" as used here includes regulations with respect to the height of a building, and the size thereof, lot coverage, side and rear yard lines, density of population, and the like. Such restrictions are to be distinguished from "use restrictions" which, as the name indicates, relate to the land uses permitted under the zoning ordinance. 2 Rathkopf, Law of Zoning & Planning (3d ed.), pp. 45-1, 45-2.

adverse an effect upon the landowner as to preclude his full enjoyment of a permitted use. Adversity justifying relief, these decisions say, requires only a showing that the literal enforcement of the restrictive provisions will result in something more than *mere inconvenience*. In this case, the finding is that the applicants' inability to construct "an economically sound building project"—whatever that phrase may mean—without relief from the setback provisions of the ordinance, has the necessary adverse effect, and entitles applicants to a *deviation* thereby abrogating, as completely as if they had been repealed by the city council, restrictions which have been part of the city's comprehensive zoning plan since its enactment. The majority approve. My disagreement is with the *Viti* doctrine generally; not with the application of that doctrine to the facts of this case. Basically and in brief, my reason for disagreeing is that the controlling legislation does not authorize a zoning board to grant a *Viti*-type *deviation* from area restrictions.

I opened my dissent in *Travers* v. *Zoning Board of Review*, 101 R. I. 510, 225 A.2d 222 (1967), by saying at 225:

> "The petitioner makes no direct attack upon the *Viti* doctrine, although upon such a challenge the court would have the opportunity, if it so desired, to re-examine the validity of the principle that side and rear yard regulations governing a permitted use do not constitute 'zoning' as that term is generally construed."

Although that language seems reasonably clear even on re-reading, what was intended as an invitation to litigants to challenge the *Viti* doctrine has gone unanswered. Notwithstanding, I believe the time has come for me to express my views. Those views have changed with time for although not a member of the court when *Viti* was decided, I joined in *Reynolds* v. *Zoning Board of Review*, 96 R. I. 340, 191 A.2d 350 (1963).

Ordinarily, the persistent acceptance by this court of a principle of law would suffice, even though I might disagree

with the principle, to dissuade me from dissenting. While a contrary or differing view of a dissent may be helpful in the formulation and development of a principle of law, once it has become settled, disagreement, except upon substantial grounds, trespasses upon stare decisis and makes for uncertainty and instability in the law. *Colarusso* v. *Mills,* 99 R. I. 409, 415, 208 A.2d 381, 385; *St. Germain* v. *Lapp,* 72 R. I. 42, 51, 48 A.2d 181, 186. The principle of stare decisis which requires me to stand by precedents applies, however, only where the point has been settled by the decisions. Obviously, a point is not settled if the same rule of law is not consistently applied to comparable factual situations. This, in my judgment, is what this court has done where the issue has been relief from area restrictions.

As I read the cases, I find some which speak of *deviations* and use *mere inconvenience* as the yardstick for determining entitlement to relief from area restrictions. Those are the *Viti* cases. Others, however, employ *variance* language and *undue hardship* concepts, and hold that relief from area regulations cannot be granted, absent a showing that an insistence upon a literal enforcement thereof will deprive the owner of all beneficial use of his property and that the proposed use will not be contrary to the public interest. Such cases are *Caccia* v. *Zoning Board of Review,* 83 R. I. 146, 113 A.2d 870 (1955); *Phelan* v. *Zoning Board of Review,* 90 R. I. 490, 159 A.2d 802 (1960); *Pettine* v. *Zoning Board of Review,* 96 R. I. 404, 192 A.2d 433 (1963). Notwithstanding that the two lines of cases are in direct conflict in both rationale and result, nowhere in either line is the other qualified, distinguished, overruled, or even mentioned.

The majority have discussed the *Viti* cases; a reference to the others is appropriate. In them, notwithstanding that application of the *Viti* rule might have permitted relaxation of the pertinent area restrictions, the court quashed the decisions granting relief. A comparison of the facts and hold-

ings in these cases with those in the *Viti* line demonstrates that this court has not applied a single rule of law in deciding if and under what circumstances area restrictions should be relaxed, but has instead, without stated reason, shifted from one standard to another.

In *Caccia,* the relief sought was from a provision restricting utilization of more than 30% of a lot area in a residence district for buildings or other structures, and the owner, whose existing residence occupied slightly more than the maximum permitted coverage, sought authority to erect a private garage—a permitted use. The court held that a lot coverage restriction could not be relaxed even for a permitted use in the absence of a showing of undue hardship.

*Phelan* was decided by the same court which only eight months later decided *Viti.* It refused to permit the construction of a one-family dwelling—again a permitted use—10 feet, rather than the prescribed 25 feet, from a lot line because the evidence did not disclose that it was necessary "* * * to locate the building so near to the abutting line of the street in the interest of safety, the general welfare of the city, or to avoid an unreasonable hardship on these applicants in the beneficial use of their land."

In *Pettine,* a case which postdates several of the *Viti* cases, the application was for relief from the regulatory provisions pertaining to group housing, height (number of stories), and lot areas so as to permit the construction of an apartment house—a permitted use. The applicant's position was that *Viti* had changed the standard for relief, that *undue hardship* was no longer the yardstick for passing on non-use regulations, and that it was entitled to relief upon its showing that the investment required for an apartment house was such that one could not be constructed if the

area restrictions were strictly enforced.[2] The court denied relief without citing or referring to *Viti* and in doing so, implicitly, at least by dicta, rejected that argument when it said that the record contained "* * * no legally competent evidence upon which the finding of unnecessary hardship could be based."

*Caccia, Phelan* and *Pettine* cannot be squared with the *Viti* cases and it is this lack of consistency in the decisions, as well as what with the knowledge that has come from experience on the court is now a fundamental disagreement with the *Viti* doctrine, which prompts my dissent. In my judgment that doctrine is indefensible. It rests upon a pronouncement, made without benefit either of cited authority from other jurisdictions or of independent rationale, that side and rear yard restrictions "* * * do not constitute 'zoning' as that term is generally construed." That is the pith of the doctrine; without it, all that follows lacks either substance or relevance.

If I could accept that statement, then perhaps, although not preferring them, I might acquiesce in the *Viti* decisions because they are more recent and more numerous. The notion, however, that area restrictions are not "zoning" is so

---

[2]Its brief reads:

"Moreover, it is interesting to note that in the instant case, the *use* to which the subject premises may be put has *not* been changed. This property has been zoned for apartments for some time. We contend that although the Board has heard sufficient evidence to sustain its findings, it was not necessary for Applicant to make a showing of unnecessary hardship of the kind that must be made to warrant an exercise of a Board's discretion to vary the application of the terms of an ordinance which establishes restrictions on the *use of land*. It is respectfully submitted that *Viti* v. *Zoning Board of Review*, 166 A.2d 211 is much more in point than the cases cited by Petitioners.

"There was evidence before the Board that the minimum number of stories to warrant the expense of an elevator in a high-rise apartment is six. A minimum amount of investment is required, which must be justified by a fair return. It was clearly stated that no less than 46 apartment units could justify the investment required to construct the apartment."

antithetical to basic conceptions of zoning that it must be summarily rejected. While I see no need to go further than to say that such restrictions along with those which regulate use equally affect and are a part of zoning, an eminent textwriter on the subject says that they "* * * have an even greater relationship to the purposes of comprehensive zoning than do use regulations." 1 Rathkopf, Law of Zoning & Planning (3d ed.), p. 34-2. Purposed upon minimizing the dangers of fire, preventing the evils of overcrowding, and preserving the right to light and air, they are familiar to comprehensive zoning ordinances everywhere, and the power to enact them was settled even before it was decided that the uses to which land might be put could also be regulated. *Village of Euclid* v. *Ambler Realty Co.*, 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303.

Our enabling zoning legislation (G. L. 1956, 45-24), which is keyed to both area and use restrictions, neither differentiates between them nor does it set one off as something different from the other. A reading of §45-24-1, the section which defines the purposes and the scope of the act, makes this obvious. The legislature there empowered the municipalities of this state "to regulate and restrict the height, number of stories and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes."

Certainly that language relates as much to area restrictions as it does to use regulations. Its pattern and scheme is clear and well defined. It admits to no ambiguity or doubtful meaning. First, it speaks of height, lot coverage, yard size and other like restrictions and then it talks of the location and use of land. The power to regulate each is contained in the same grant of power and nothing in that grant, or indeed in the entire act, intimates that the legislature in-

tended that area restrictions would "* * * not constitute 'zoning' as that term is generally construed," *Viti, supra,* at 65, 166 A.2d at 213, or that such restrictions were intended to be zoning of a different character and kind from those regulating land use.

Once the *Viti* notion that such restrictions are not "zoning" is discarded, I find no difficulty with the suggestion in *Reynolds* v. *Zoning Board of Review,* 96 R. I. 340, 342, 191 A.2d 350, 352 (1963), that "* * * there is a fundamental difference between zoning enactments that classify land uses and thereby designate the uses to which land may be put and the enactment of rules which are intended only to prescribe the manner in which such uses as are permitted may be exercised." A recognition that the two types of restrictions are different, or even that they are fundamentally so, does not, however, carry with it as a corollary that the standard to be applied by zoning boards in passing upon a request for relief from a literal enforcement of use restrictions is different from that controlling when the restrictions affect area rather than use.

To ascertain whether they are different and if a zoning board has authority to differentiate between the two by applying as to one a *mere inconvenience* standard and as to the other an *undue hardship* yardstick, one must look to the controlling section of the enabling legislation (§45-24-19). From that section stem a board's authority and an enumeration of its powers. They are set out simply, concisely, clearly, explicitly and with specificity. It prescribes as well as circumscribes the board's total jurisdiction; and that jurisdiction may neither be enlarged nor restricted except by legislative action. These are settled principles. *Noonan* v. *Zoning Board of Review,* 90 R. I. 466, 159 A.2d 606; *Mello* v. *Board of Review,* 94 R. I. 43, 177 A.2d 533. Specifically, it authorizes a board to hear and decide appeals from an administrative official charged with the enforcement of zoning

legislation, and, in addition, to decide special exceptions to the terms of the ordinance where so authorized, and to allow "* * * such variance in the application of the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship * * * ." This is the extent of the powers conferred. The legislature has granted no others. If it had intended otherwise, it could have done so by appropriate language. Nowhere, however, either directly or by reasonable implication, did it include any authority to permit a *deviation* from area restrictions merely upon a showing of an adverse effect amounting to something more than *mere inconvenience*. The language which the legislature used simply cannot be stretched to confer such a power upon a zoning board. Since the grant is limited in scope, any action by the board to vary the application of the ordinance, save upon the precedents prescribed by the legislature, would be an attempt to exercise a power not granted and therefore invalid.

We have then only the *undue hardship* test, a test whose meaning is long settled in our law. It makes entitlement to a variance dependent upon a showing that a literal enforcement of the terms of the ordinance will deprive the landowner of all beneficial use of his property. *Sundin* v. *Zoning Board of Review*, 98 R. I. 161, 200 A.2d 459; *Laudati* v. *Zoning Board of Review*, 91 R. I. 116, 161 A.2d 198; *Morgan* v. *Zoning Board of Review*, 52 R. I. 338, 160 A. 922.

It may well be "* * * that to impose a burden on a landowner of proving that degree of unnecessary hardship merely to obtain relief from such lot-line restrictions would be to make an extremely illiberal application of the ordinance." *Reynolds, supra*, at 342, 191 A.2d at 352. The cure for that *extreme illiberality*, however, is legislative, not judicial. A court's function is to apply and give effect to the law as enacted by the legislature; not to rewrite it because in its

judgment what has been written is unwise or lacking in liberality. *Larochelle* v. *Hickory House, Inc.*, 80 R. I. 334, 340, 96 A.2d 830, 834; *Moretti* v. *Div. of Intoxicating Beverages,* 62 R. I. 281, 286, 5 A.2d 288, 290.

Perhaps in an attempt to avoid such an "extremely illiberal" application of area restrictions, the enabling legislation in some states grants broader powers than does our statute and permits a variance in the application of the terms of the zoning ordinance if their liberal enforcement will result in "undue hardship or practical difficulties." Under such a grant, the New York courts, attaching significance to the disjunctive "or," have held that the statute fixed two standards—*unnecessary hardship* for use variances, and *practical difficulties,* a more liberal and easier-to-be-satisfied test, for an area variance. *Otto* v. *Steinhilber,* 282 N. Y. 71, 24 N.E.2d 851 (use restriction); *Village of Bronxville* v. *Francis,* 1 App. Div.2d 236, 150 N.Y.S.2d 906 (area restriction). New Jersey, however, rejects the duality concept and holds that a statute permitting a variance for "peculiar and exceptional practical difficulties" does not establish two criteria. The former it said "* * * is necessarily inclusive of the latter, for where peculiar and exceptional practical difficulties exist undue hardship also exists," and it applies the same test, irrespective of the type of variance. *165 Augusta Street, Inc.* v. *Collins,* 9 N. J. 259, 263, 87 A.2d 889, 891. Maryland apparently steers a middle course. There, the court, although refusing to construe "practical difficulty" as the equivalent of a taking in the constitutional sense, said, in an area restriction case, that it would have reached the same result "* * * under the New York rule which seems to make a distinction between practical difficulty and undue hardship and the New Jersey rule which regards them as synonymous." *Loyola Federal Savings & Loan Ass'n* v. *Buschman,* 227 Md. 243, 176 A.2d 355, 359.

See also *Norcross* v. *Board of Appeal,* 255 Mass. 177, 150 N. E. 887.

If our enabling legislation contained in addition to "undue hardship" an authorization to vary for "practical difficulties" or for "peculiar and exceptional practical difficulties," it would open to interpretation whether or not the authority to vary the application of the terms of the ordinance in respect to area variances might be enlarged; and it would give to the *Viti* decisions the legal foundation they do not now enjoy. Without such an authorization, however, the warrant the *Viti* decisions have issued to the zoning boards to exercise a power which the legislature has not granted is judicial legislation.

That the applicants under my view would be denied relief in the zoning forum does not necessarily mean that they would be remediless. The legislature might be persuaded that the *undue hardship* and *not contrary to the public interest* standard as applied to non-use restrictions is so "extremely illiberal" as to require substantial amelioration; or the local legislature might moderate or even repeal the setback restrictions, if it were made aware that an insistence upon their literal enforcement under present-day building conditions would make it economically unsound and financially impossible to undertake a building project in the downtown core area where new modern buildings are needed. It is along those avenues, rather than before the zoning board, that in my judgment the applicants, if unable to establish *undue hardship,* should have proceeded.

I fully concur with what the majority hold on the other issues in the case. For the reasons indicated, however, I

am unable to agree with the *Viti* decisions, and hence I respectfully dissent.

*Kelly & Butterfield, Charles Butterfield, Jr.* (for Westminster Corporation), *Jordan, Hanson & Curran, Kirk Hanson, William A. Curran* (for Providence Building Company), for petitioners.

*Robert J. McOsker,* City Solicitor, *Edward F. Malloy,* Assistant City Solicitor, *Temkin, Merolla & Zurier, Martin M. Temkin, Melvin L. Zurier* (for First Hartford Realty Corporation), for respondent.