DECISION
Before this Court is an appeal from a decision of the Zoning Board of Review of the Town of Burrillville (Board) denying Forge Construction Management, Inc. (Forge or appellant) dimensional variances from §§ 11-6.1 and 11-7.1 of the zoning ordinances of the Town of Burrillville (Town) for building a residential structure on 10,665 square feet of vacant land in the Town. The appellant seeks reversal of the decision of the Board and also requests that the variances be granted. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 FACTS/TRAVEL
On March 14, 2000, the Board held a public hearing on the matter of the requested variances. At this hearing, Mr. Riley Lamson, representing Forge, indicated to the Board that Forge planned to build a three bedroom, single family dwelling on the property in issue. The lot which Forge owns is located on Assessor's Plat 32, Lot 11 in Burrillville, and is abutted by two narrow roads: Pulaski Road on its north-westerly side and Pulaski Hill Road on its southerly side. In order to construct the proposed dwelling, the appellant sought variances from the requirements of §§ 11-6.1 and 11-7.1. Section 11-6.1 provides a table of dimensional regulations for different types of zoning classifications. Section 11-7.1 requires that the Rhode Island Department of Transportation (RIDOT) and the director of public works for the Town of Burrillville (Director) provide the zoning enforcement officer with written confirmation that a proposed land use will "not substantially interfere with traffic flow and will not constitute a safety hazard to traffic flow on state and town highways." Town of Burrillville Zoning Ordinance § 11-7.1.
The lot in question is partially zoned F-2 residential/farming and partially overlaid with an A-120 aquifer classification. The F-2 dimensional regulations require a minimum lot size of two acres and minimum setbacks from the surrounding streets of 40 feet in the front, 40 feet in the rear, and 15 feet on the side, as well as a maximum building coverage of 15 percent of the land. The A-120 classification requires a minimum lot size of 120,000 square feet and minimum setbacks of 40 feet in the front, 40 feet in the back, and 25 feet on the side in addition to a maximum building coverage of only five percent. Since the subject property is a legal nonconforming lot of record, the local zoning ordinances mandate treating F-2 zoned areas as if they were zoned R-12. Under the R-12 zoning classification a minimum lot size of 12,000 square feet and a 30 foot setback in the front, 30 feet in the rear, and 10 feet on the side, with a maximum building coverage of 25 percent.
During the hearing, the Board noted that Mr. Lamson sought variances based on the subject lot's being zoned F-2. He was then given the opportunity to amend his application to reflect the applicable R-12 and A-120 zoning restrictions; however, he did not make this amendment.
On the same date, the Board issued its decision to deny the requested relief to Forge, and on March 24, 2000, the decision was publicly posted. On April 5, 2000, Forge timely filed its appeal.
 STANDARD OF REVIEW
Aggrieved parties may appeal a decision of the Board to this Court pursuant to G.L. 1956 § 45-24-69. This section provides that the Court's review of the decision:
 "(c) shall be conducted . . . without a jury. The court shall consider the record of the hearing before the zoning board of review . . .
 (d) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record, or;
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
Essentially, the reviewing court gives deference to the decision of the zoning board, the members of which are presumed to have special knowledge of the rules related to the administration of zoning ordinances, and the decision of which must be supported by legally competent evidence. Westminister Corporation v. Zoning Board or Review of the City of Providence, et al., 103 R.I. 381, 238 A.2d 353, 358 (R.I. 1968); see Technic, Inc., v. Rhode Island Department of Employment and Training,669 A.2d 1156 (R.I. 1996); see also, Braun v. Zoning Bd. of Review of South Kingstown, 99 R.I. 105, 206 A.2d 96 (1965) (defining competent evidence as that presumed to be possessed by members of such boards). This deference, however, must not rise to the level of "blind allegiance." Citizens Savings Bank v. Bell, 605 F. Supp. 1033, 1042 (D.R.I. 1985). The court conducts a de novo review of questions of law; thus the Court may vacate the decision of the zoning board if it is "clearly erroneous in view of the reliable, probative and substantial evidence of the whole record." G.L. 1956 § 45-24-69 (d)(5).
 THE DIMENSIONAL VARIANCE
The appellant argues that the Board's decision to deny the application for the dimensional variances was "based on neither law nor fact." Relying on Salve Regina College v. Zoning Bd. of Review of City of Newport, 594 A.2d 878 (R.I. 1991), Forge maintains that the Board "had no competent testimony or evidence in the record on which it could base its conclusion." Appellant's Brief at 7. Alternatively, The Board argues that the appellant did not meet its statutory burden of proof/production.
It is axiomatic in Rhode Island zoning law that the applicant seeking relief from zoning restrictions bears the burden of proof as to why such relief is warranted. Reynolds v. Zoning Bd. of Review of Town of Lincoln, 95 R.I. 437, 187 A.2d 667, 668 (1963). Specifically, when applying for dimensional variances, the applicant must demonstrate to the zoning board of review
 "(c)(1) [t]hat the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant . . .
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary.
 (d) (2) in granting a dimensional variance, that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience, which means that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted is not grounds for relief."
G.L. 1956 § 45-24-41. Subsequent to the Board's hearing, the Supreme Court of Rhode Island interpreted revised subsection (d) (2) to have effectively set the bar higher for dimensional variance applicants regarding their burden of proof. Sciacca v. Caruso, 769 A.2d 578 (R.I. 2001). Under the so-called Viti doctrine (so named after the seminal zoning case of Viti v. Zoning Board of Review of Providence, 92 R.I. 59,166 A.2d 211 (1960)), one needed only demonstrate that the hardship complained of constituted more than a mere inconvenience. However, under the new zoning Enabling Act, applicants must additionally show that "no other reasonable alternative" exists to the enjoyment of the property's legal beneficial use. See id. at.5.
At the hearing, the appellant demonstrated to the Board that while some of the above requirements had been satisfied, others had not. Specifically, as to subsections (c) (1) and (d) (2), the appellant argued that "the subject lot does not have the square footage for the two-acre minimum. It does not have frontage or a town accepted road; and because of the dimensions of the lot, I cannot meet the front and rear setbacks." Tr. at 6. Additionally, even though Mr. Lamson did not amend his application to reflect the restrictions imposed by the A-120 aquifer overlay, the Board found that he would need relief from such restrictions in order to build the proposed dwelling. Therefore, the Board concluded that the hardships complained of were due to the unique characteristics of the subject lot and not to the general characteristics of the surrounding area. Resolution at 4. Furthermore, the Board found that the hardships complained of constituted more than a mere inconvenience and that there was no other reasonable alternative for the appellant to enjoy the property's legally permitted use. Id.
As to subsection (c) (2), the appellant argued, "I've done nothing . . . to create this hardship, and there's nothing I can do to alleviate the hardship." Tr. at 6. While the Board noted that the appellant, "had knowledge of the land and its configuration when the applicant purchased [it]" Resolution at 4, they nevertheless found that the relief sought was neither occasioned by any prior act of Mr. Lamson, nor resulted primarily from his desire to realize greater financial gain. Id.
Regarding subsection (c) (3), Mr. Lamson testified that Forge had constructed several homes in the area and that the proposed construction would be of a similar nature. Additionally, Mr. Lamson testified that "the construction of this house will not diminish the surrounding property values there." Id. The Board found that if the requested variances were granted, the proposed construction would neither alter the general character of the area, nor impair the intent or purpose of the zoning ordinance or comprehensive plan on which the ordinance was based. Resolution at 4. However, the Board heard the lay testimony of an abutting landowner who described the 15 foot width of Pulaski Hill Road (onto which the proposed development's driveway would egress) and the difficulties that service vehicles regularly encounter in attempting to maneuver through it and the other surrounding roads. As one Board member remarked, "you're looking at a very small lot there and adding to a congested area already. . . ." Tr. at 29. Consequently, the Board also noted in its decision that if the requested variances were granted, the applicant would have to produce a letter from the Burrillville Ambulance and Rescue that they currently service the surrounding area and subject lot.
With respect to subsection (c) (4), Mr. Lamson, the Board noted, mistakenly argued for relief from the requirements of the F-2 zoning classification. Actually, as the Board found, he should have applied for relief from the zoning requirements of both the R-12 and A-120 classifications. The appellant's unamended application sought the relief of nine feet in the front and ten feet in the rear; the Board noted that Mr. Lamson should have requested variances of 19 feet in the front, 20 feet from the rear and 12 1/2 feet from the side for the R-12 zoned portion. Id. at 5. Additionally, the Board found that Mr. Lamson's application should have requested relief from the requirements of the A-120 zoned portion of the subject lot. These deficiencies led one Board member to comment that he was "having a problem with the application, due to the fact that the requested relief was actually incorrect on the rear, incorrect on the front, on the side; and now we also have, because it's an aquifer, the envelope is five percent of land coverage rather than 25 percent." Tr. at 16,17. Subsequently, another member remarked that "it seems like we're requesting an awful lot for a person [who is] in the construction business, understands the rules, and purchased the property in 1999. I don't have much compassion." Id. at 29. In its written decision, the Board ultimately found that the appellant did not show that the requested relief constituted the least relief necessary.
After review of the entire record, this Court finds the decision of the Board was supported by the reliable, probative and substantial evidence of the whole record. Substantial rights of the appellant have not been prejudiced. Accordingly, the decision of the Board is affirmed.
Counsel shall submit the appropriate judgment for entry.