DECISION
Cobble Hill Development, LLC, as successor in interest to Ralph and Janine Martinelli, appeals from the Town of Foster Zoning Board of Review's April 13, 2005 decision denying the Martinellis' application for dimensional variances from the provisions of the Foster Zoning Ordinance.[1] Cobble Hill argues that the Zoning Board's decision is affected by errors of law and is not supported by substantial evidence. Additionally, Cobble Hill contends that it is entitled to reasonable litigation expenses pursuant to the Equal Access to Justice Act, R.I. Gen. Laws § 42-92-1. For the reasons set forth in this Decision, this Court reverses the decision of the Zoning Board and determines that the appellant may be entitled to an award of reasonable litigation expenses, subject to further hearing.
 I. Factual Background and Procedural History
On October 10, 2004, Ralph and Janine Martinelli submitted an application to the Foster Zoning Board of Review for dimensional zoning variances relating to their plan to build a single family home on their property. The subject property is a 3.6 acre unimproved lot of approximately 420 feet by 380 feet, identified as lot 46A on assessor's plat 3, and located along *Page 2 
Victory Highway. Transcript of Hearing In Re: Application of Ralph J. and Janine M. Martinelli dated April 13, 2005 at 4 [hereinafter "Tr."]. The Martinelli family owned the lot continuously since 1962. Tr. at 5. The lot is a substandard lot of record under the Foster Zoning Ordinance. Tr. at 4. The property is located in Foster's Agricultural/Residential (AR) zoning district,[2] which ordinarily requires a minimum lot area of 200,000 square feet or 4.6 acres. Despite the fact that the Martinellis' lot is undersized, they have the right to develop their property with a permitted use, as the lot is a substandard lot of record with an area of 10,000 square feet and frontage of at least 100 feet.[3] A "single family detached dwelling" is a permitted use in the Foster AR zoning district. Foster Zoning Ordinance, art. 4, § 2. The Martinellis sought to build a home measuring 32 feet by 26 feet, with a one-car garage measuring 16 feet by 20 feet, on the premises. Tr. at 10.
The property is bisected by a waterway known as Turkey Meadow Brook, which places most of the property within the jurisdiction of the Department of Environmental Management. Tr. at 8, 16-17. Under DEM regulations, a permit is required to build closer than 200 feet from wetlands. The Martinellis sought and received the necessary wetlands alteration permit from *Page 3 
DEM to construct, inter alia, a three bedroom home and individual sewage disposal system ("ISDS") on the property. DEM Permit to Alter Freshwater Wetlands at 1 [hereinafter "DEM Permit"]. Having received DEM approval of their plan, the Martinellis proceeded to apply for dimensional variances from the Foster Zoning Board. Dimensional variances were required to place the ISDS on the property. Tr. at 5, 10-11.
The Martinellis sought three dimensional variances from the Zoning Board regarding placement of the ISDS: (1) a variance to allow them to place the ISDS 40 feet from Victory Highway instead of complying with the minimum setback of 60 feet from a public road; (2) a variance to allow them to place the ISDS 67 feet from neighboring property instead of the required 100 feet; and (3) a variance to allow them to place the ISDS 95 feet from the brook instead of complying with the prescribed setback of 200 feet from any pond, stream, or brook. Foster Zoning Ordinance, art. VI, § 6; Tr. at 10-11.
The Zoning Board held a public hearing on the Martinellis' application for zoning variances on April 13, 2005. Tr. at 1. Several experts testified at the hearing, including: certified wetland scientist Scott P. Rabideau; soil evaluator and ISDS designer Angelo M. Raimondi; Edward Pimental, certified planner and expert in land use and comprehensive plans; and Robert DeGregorio, expert in real estate brokerage and valuations. Tr. at 13-43. In addition to oral testimony, Scott Rabideau, Robert DeGregorio, and Edward Pimental submitted reports to the Zoning Board outlining their respective opinions and findings regarding the Martinellis' plan for development. See Edward Pimental, Memorandum Re:Zoning Board of Review Application, Dimensional Relief for ProposedSingle-Family Dwelling [hereinafter "Pimental Report"]; Robert S. DeGregorio, Real Estate Summary Re: Assessor's Plat 3, Lot 46A
[hereinafter "DeGregorio Report"]; Scott P. Rabideau, Narrative ofBiological Impact for Victory Highway, *Page 4 A.P. 3, Lot 46A, Foster Rhode Island [hereinafter "Narrative of Biological Impact"]. One lay witness, an abutting landowner, testified at the hearing. Tr. 43-47.
At the close of the hearing, the Zoning Board voted on the Martinellis' request for zoning variances. Three members voted in favor of, and two voted against, granting the requested dimensional variances. Tr. at 53. Four votes in favor were required to approve the plan. Thus, the motion to grant the variances failed and the variances were accordingly denied. Id.
The Zoning Board recorded its written decision on June 9, 2005. In its decision, the Zoning Board set forth the following findings of fact:
 The land in this case is a 3.6-acre lot that is bisected by Turkey Meadow Brook and has other wetlands. Turkey Meadow Brook is a substantial stream, more than 19 feet wide. Under DEM regulations, there is a required 200-foot riverbank wetland setback. This means that virtually all of the lot falls into the wetland category.
 DEM however gave a variance for placement of a septic system on the lot. The leaching field would be 95 feet from the stream.
 The septic system proposed requires pre-treatment, pumping, monitoring, and an alarm system. The entire system is within the DEM jurisdictional wetland.
 The applicant seeks three variances from the provisions of the Foster Zoning Ordinance for installation of the septic system. Article VI, section 6.
 Front Yard — from 60 to 40 feet
 Side Yard — from 100 to 67 feet
 Distance from stream — from 200 to 95 feet. *Page 5 
Foster Zoning Board of Review Decision at 1. After reciting its findings of fact, and then noting the policy reasons for the particular zoning requirements from which the Martinellis sought variances,[4]
the Board stated its conclusions:
 The application fails to meet these standards [i.e., the dimensional standards set forth in the Zoning Ordinance]. The leachfield is 67 feet from the property line. This interferes with the use or potential future use of the adjoining property. The leachfield is within 40 feet of the road line. If this system fails it will be obnoxious to the neighbors and passersby. If a vehicle leaves the road it could damage the leaching system. The leachfield is within 95 feet of a large stream, which flows directly into the Audobon Society's Parker Woodland and then into the Flat River Watershed. This presents clean water problems and will compromise a natural area along the Turkey Meadow Brook.
 The application in this case fails to satisfy several criteria necessary for granting a variance:
 • Granting a variance would alter the character of the surrounding area and would impair the intent and purpose of the Zoning Ordinance and Comprehensive Plan. As pointed out above it would both alter the character of the surrounding *Page 6 
area and will impair the purposes of protecting water quality and natural areas.
 • The relief requested is not shown to be the least relief necessary. The project requires at least three departures from the requirements of the ordinance if a home is to be built. Other permitted uses will not require the extensive variances sought.
 • The application has not shown that there is no other reasonable alternative to enjoy one of the many legally permitted uses of the property. Constructing a house is not the only use to which the property may be put, and the fact that it may be more profitable to the applicant is not grounds for a variance.
Decision at 2-3.
Subsequent to the Zoning Board's decision, the title to the property was transferred from the Martinellis to Cobble Hill Development, LLC. Cobble Hill Development, LLC, as successor to the Martinellis, was substituted as petitioner in this matter and has appealed the decision of the Foster Zoning Board of Review to this Court pursuant to R.I. Gen. Laws § 45-24-69.
Cobble Hill questions the Zoning Board's decision on several grounds. First, it argues that it was erroneous for the Zoning Board to consider whether other permitted uses would require the same degree of dimensional relief as the Martinellis' plan to build a single-family home. Mem. of Cobble Hill at 2. Second, Cobble Hill argues that the Zoning Board erred by requiring a showing that there was no reasonable alternative to the requested relief. Id. Third, it argues that the Board's decision is not supported by substantial evidence and is arbitrary and capricious. Id. at 2-3. Additionally, Cobble Hill argues that it should be allowed, pursuant to the Equal Access to Justice Act, to apply for reasonable litigation expenses, on the grounds that the Zoning Board's decision and its defense of that decision is without substantial justification. Id. at 3. Each of these claims is addressed below. *Page 7 
 II. Standard of Review
The Superior Court's review of zoning board decisions is controlled by R.I. Gen. Laws § 45-24-69 (d), which provides:
 The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing a zoning board decision, the Superior Court may not substitute its judgment for that of the zoning board if it conscientiously finds that the board's decision was supported by substantial evidence. Apostolou v. Genovesi, 120 R.I. 501, 507,388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a mere scintilla but less than a preponderance." Caswell v. George Sherman Sand andGravel Co., 424 A.2d 646, 647 (R.I. 1981) (citing Apostolou,120 R.I. at 507, 388 A.2d 824-825). The reviewing court simply "examines the record below to determine whether competent *Page 8 
evidence exists to support the tribunal's findings." New EnglandNaturist Ass'n Inc. v. George, 646 A.2d 370, 371 (R.I. 1994) (citingTown of Narragansett v. International Ass'n of Fire Fighters, AFL-CIO,Local 1589, 119 R.I. 506, 380 A.2d 521 (1977)). If the record is "completely bereft of competent evidentiary support" for a board's findings, then the decision must be reversed. Sartor v. CoastalResources Mgmt. Council, 542 A.2d 1077, 1083 (R.I. 1988). Additionally, it is not within this Court's authority to uphold a zoning board's decision which is affected by error of law. Harmel Corp. v. Zoning Bd.of Review, 603 A.2d 303, 308 (R.I. 1992).
 III. The Board's Decision
At the outset, this Court observes the statutory requirements that control a zoning board's decision of whether to grant dimensional variances from a zoning ordinance:
 (c) In granting a variance, the zoning board of review requires that evidence to the satisfaction of the following standards is entered into the record of the proceedings:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting those physical disabilities addressed in § 45-24-30(16);
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary.
 (d) The zoning board of review shall, in addition to the above standards, require that evidence is entered into the record of the proceedings showing that: * * * (2) in granting a dimensional *Page 9 
variance, that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted is not grounds for relief. ***
R.I. Gen. Laws § 45-24-41(c) (d). With these statutory requirements in mind, this Court must analyze the Board's decision.
 A. The Board's Inquiry Into Other Permitted Uses
One of the reasons given by the Zoning Board for denying the applicant's request for zoning variances is that "other permitted uses will not require the extensive variances sought." Decision at 3. The Board also noted that "[c]onstructing a house is not the only use to which the property might be put, and the fact that it may be more profitable to the applicant is not grounds for a variance."Id. Cobble Hill contends that in relying in part on the existence of other permitted uses, the Board applied an erroneous legal standard, such that its decision is affected by error of law.
In Westminster Corp. v. Zoning Bd. of Review of Providence,103 R.I. 381, 238 A.2d 353 (1968), our Supreme Court rejected the view that a zoning board should consider "other permitted uses that could be made of the land under the terms of the [zoning] ordinance" in determining whether to grant a zoning variance. 238 A.2d at 358, 103 RI at 389. The Court concluded that:
 The applicants in the instant case seek a use specifically permitted by the terms of the ordinance, and they have established that a literal enforcement of the terms of the ordinance which regulate the matter in which that use may be had has the effect of depriving them of reasonably full enjoyment of the permitted use. In such situation they are entitled to relief upon the establishment of the necessary ground therefore, and this whether or not the ordinance provides for other permitted uses. *Page 10 
Westminster Corp., 103 R.I. at 389-90, 238 A.2d at 358. Thus, the Supreme Court held that in determining whether to grant a dimensional variance, a zoning board's inquiry should be limited to whether the applicant has established "the necessary ground" for granting the variance, and should not consider what other permitted uses are available to the applicant. In other words, "[t]he question is whether . . . full compliance with the setback provisions of the ordinance would constitute more than a mere inconvenience adversely affecting full enjoyment of the permitted use." Westminster Corp. at 357. If full compliance would impose more than a mere inconvenience, the applicant is entitled to the variance, which should be "limited to the extent of relief demonstrated to be reasonably necessary to the enjoyment of the permitted use sought to be served." Lincoln Plastics Products Co. v.Zoning Bd. of Review of the Town of Lincoln, 242 A.2d 301, 303 (R.I. 1968). More recently, the Supreme Court reaffirmed this principle by stating that it could not "countenance a development scheme in which the town [could] withhold its approval of a dimensional variance until it receives a proposal for a use the town prefers." Lischio v. Zoning Bd.of Review of the Town of North Kingstown, 818 A.2d 685, 695 (R.I. 2003);see also Wall v. Minifie, 2004 WL 2334743 at *6 (R.I.Super. 2004) (". . . the Applicant here need not demonstrate the lack of a permitted use that could be built without a dimensional variance . . .").
The Foster Zoning Board exceeded the proper scope of its analysis when it denied the Martinellis' application in part because other permitted uses were available in the AR zoning district. Neither R.I. Gen. Laws § 45-24-41, which establishes the criteria for granting variances, nor cases interpreting that provision, require a property owner to show that another permitted use would not require less relief than the permitted use which he or she has chosen. Nonetheless, the Zoning Board considered whether, and to what extent, other permitted uses (which were wholly *Page 11 
unspecified) would require dimensional variances. See Decision at 3. Basing its conclusions on whether other permitted uses may have been, in theory, available to the Martinellis, the Zoning Board deviated from the proper scope of its inquiry, as set forth § 45-24-41 and explained by our Supreme Court. Its decision therefore, was affected by error of law.
 B. The Board's Application of the "No Other Reasonable Alternative" Standard
The second ground on which the appellant calls into question the Zoning Board's decision is its application of the "no other reasonable alternative" standard to the Martinellis' application for dimensional variances. Review of the pertinent law discloses that the Board applied an incorrect legal standard to the Martinellis' application.
A brief summary of the law relating to dimensional variances is instructive. Prior to 1991, applicants for dimensional variances had to demonstrate "an adverse impact amounting to more than a mere inconvenience" in order to receive the requested variance. von Bernuthv. Zoning Bd. of Review of the Town of New Shoreham, 770 A.2d 396, 400
(R.I. 2001) (citing Sciacca v. Caruso, 769 A.2d 578, 583 (R.I. 2001)). This rule was part of the so-called Viti doctrine; in Viti v. Zoning Bd.of Review of the City of Providence, 166 A.2d 211 (R.I. 1960), the Supreme Court recognized that the burden on an applicant for dimensional variances was less than the burden on a party seeking a true variance,i.e., permission to put one's land to a non-permitted use.166 A.2d at 213. Under Viti, a party seeking a dimensional variance was not required to "prove a loss of all beneficial use in order to establish a right of relief." Id. Following Viti, a party seeking a dimensional variance only had to show that the relief sought was necessary to avoid an "adverse effect amounting to more than a mere inconvenience."Westminster, 238 A.2d at 357; see also DeStefano v. Zoning Bd. of Reviewof Warwick, 405 A.2d 1167, 1170 (R.I. 1979). *Page 12 
The Viti doctrine prevailed until 2001. In 1991, the General Assembly had amended R.I. Gen. Laws § 45-24-41(d)(2), so that applicants for dimensional variances would have to show that denial of the variance amounted to more than a mere inconvenience, "which means that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property." von Bernuth, 770 A.2d at 400. In 2001, the Supreme Court recognized that the Viti doctrine had been superseded by this statute and replaced with the higher standard prescribed by the legislature. Id. (citing Sciacca 769 A.2d at 583). However, not long after the Court recognized this change, the General Assembly once again amended the statutory provision governing dimensional variances.
In 2002, the language of R.I. Gen. Laws § 45-24-41(d)(2) was again amended so that an applicant for a dimensional variance must only show "that the hardship the applicant would suffer if the dimensional variance is not granted amounts to more than a mere inconvenience."Lischio, 818 A.2d at 691 (internal brackets omitted). The Court inLischio recognized that the change in the statute's language, dropping the "no other reasonable alternative" definition of more than a mere inconvenience, marked a return to the Viti doctrine. Id. Thus, according to statute and precedent, the proper test to apply to an application for a dimensional variance is whether the hardship the applicant would suffer if the variance is not granted amounts to more than a mere inconvenience.
In its 2005 decision on the Martinellis' application, the Zoning Board did not apply the "more than a mere inconvenience" standard required under R.I. Gen. Laws § 45-24-41(d)(2). In its decision, the Board stated that "[t]he applicant has not shown that there is no other reasonable alternative to enjoy one of the many legally permitted uses of the property." Decision at 3. Thus, the Zoning Board asked the Martinellis to satisfy a more stringent standard than is required *Page 13 
under R.I. Gen. Laws § 45-24-41(d)(2) and Lischio. Specifically, the Zoning Board applied the heightened standard that was negated by the 2002 amendment to R.I. Gen. Laws § 45-24-41(d)(2). See Lischio,818 A.2d at 691. By applying this heightened standard to the Martinellis application, the Zoning Board's decision was affected by error of law.[5]
 C. Whether Substantial Evidence Supports The Board'sDecision
The Zoning Board also denied the Martinellis' application for dimensional variances based on the following conclusions:
 Granting the variance would alter the character of the surrounding area and would impair the intent and purpose of the Zoning Ordinance and Comprehensive Plan. As pointed out above it would alter the character of the surrounding area and will impair the purposes of protecting water quality and natural areas.
Decision at 2. The Board also expressed additional concerns when it denied the Martinellis' application. The Board worried that the septic system might fail and become "obnoxious," which would raise the potential for environmental harm. Id. It expressed concern about the possibility of a vehicle leaving the road and damaging the septic system. Id. The Board also was concerned that the Martinellis' development would have an adverse impact on wildlife and the aesthetic quality of the brook and surrounding area.[6] See id. at 2. The Martinellis argue that the Zoning Board's conclusions and concerns regarding their planned development are not supported by substantial evidence. *Page 14 
To reiterate the relevant standard of review here, under R.I. Gen Laws § 45-24-69(d) this Court may decline to affirm a zoning board decision if that decision is "clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record." Substantial evidence "means more than merely `some' or `any' evidence and more than a scintilla of evidence," Apostolou, 388 A.2d at 825, but is "less than a preponderance." Id. To uphold a zoning board decision, this Court must find "substantial evidence on the whole record to support the board's findings." Id. (internal quotation marks omitted). Applying this standard of review, this Court finds that the Zoning Board's findings are not supported by the substantial evidence of record.
 1. Alteration of the Character of Surrounding Area
There is no evidence on the record that the Martinellis' plan would alter the character of the surrounding area. The Zoning Board's decision offers the following explanation regarding the conclusion that the Martinellis' plan would alter the character of the surrounding area: "The town values its natural areas. Ponds, streams, and wetlands are essential to the character of a rural town. This is true for both aesthetic reasons, for protection of wildlife and for the quality of life of the residents." The Board also noted that locating the leaching field 95 feet from the stream would "compromise an area along Turkey Meadow Brook." Decision at 2.
In rendering a decision, a zoning board must "at least articulate some findings to support its conclusions." Kaveny v. Town of CumberlandZoning Bd. of Review, 875 A.2d 1, 8 n. 6 (R.I. 2005) (". . . the board should take care that its findings of fact are clearly set forth in its decision, referring to the evidence presented, and that its conclusions of law are properly supported by its findings of fact"). The zoning board must articulate the basis for its conclusions even when it relies on any board member's special knowledge of the area in question.See Sciacca, 769 A.2d at 585 (". . . the board's decision reflecting its `special knowledge will not be upheld . . . unless the *Page 15 
record reveals the underlying facts or circumstances the board derived from its knowledge of the area.'") (citing DeStefano, 405 A.2d at 1171).
With respect to the character of the area, the Zoning Board's conclusions clearly do not rest on any findings of fact. In its findings of fact, the Board failed to determine the character of the surrounding area,[7] the character of the Martinellis' planned development, or the alleged conflict between the two that would be created were it to grant the requested variances. See Decision. Thus, it appears as though the Zoning Board's conclusion that the Martinellis' planned development would alter the character of the surrounding area was not based on any findings of fact.
Moreover, the record does not support a finding that the Martinellis' proposed home would alter the character of the surrounding area in any way. At the hearing on the Martinellis' application, several experts testified that the Martinellis' planned development would not alter the character of the area. Robert DeGregorio, an expert in real estate brokerage and valuation, testified that "I think that it will be right in line with the area; and, again, its development but I think it's going to fit right into the area." Tr. at 42. Mr. DeGregorio also submitted a memorandum to the Zoning Board stating that the project would not alter the character of the surrounding area. Edward Pimental, a certified planner and expert in land use and comprehensive plans, testified that after studying the surrounding area, this project would not alter its essential character. Tr. at 36-38. Mr. Pimental also submitted a report to the Zoning Board concluding that there would be no alteration of the area's character. See Applicant's Ex. H, Pimental Report at 8-10. Scott Rabideau, an expert biologist and wetlands scientist, testified that from "a biological point of view," the Martinellis' planned development would not alter the *Page 16 
character of the surrounding area. Moreover, Mr. Rabideau submitted a report that concluded, inter alia, that "the entirety of the delineated wetlands on-site will remain completely intact and undisturbed by this project," and that the project "should not represent a random, unnecessary, or undesirable disturbance to the freshwater wetlands on the property." Narrative of Biological Impact at 13-14. In short, the expert testimony at the hearing and the accompanying reports submitted to the Zoning Board show that the Martinellis' project would not alter the character of the surrounding area, either aesthetically or environmentally.
As such, there is an absence of any evidence of record that the Martinellis' project would alter the character of the surrounding area and no findings of fact to support such a conclusion. This Court thus concludes that the Zoning Board's finding that the Martinellis' project would alter character of the surrounding area is not supported by the substantial evidence of record and constitutes legal error.
 2. Impairment of Water Quality and Natural Areas
The main factual underpinnings of the Zoning Board's decision relate to the environmental impact of the Martinellis' proposed development. The Zoning Board's concerns regarding the impairment of "water quality and natural areas" were: the possibility that the septic system would fail resulting in "clean-water problems" for Turkey Meadow Brook and the watershed into which it flows; the possibility that the leach field would fail and become "obnoxious" to neighbors and passersby because of the proximity of the leach field to the adjoining property and the road; and the possibility that the septic system might be damaged "if a vehicle leaves the road." Decision at 2. However, there is no evidence of record to support the Zoning Board's conclusion that the Martinellis' plan would "impair the purposes of protecting water quality and natural areas." *Page 17 
When DEM approved the Martinellis' plan, it concluded that "this project does not represent a random, unnecessary or undesirable alteration of freshwater wetlands." DEM Permit at 1. In his report, Scott Rabideau concluded that "this project would result in no significant adverse effect on the functional values of the subject wetlands. Any potential impact can be lessened through the incorporation of the proposed mitigation scheme, thereby increasing the overall desirability of this proposal." Narrative of Biological Impact at 14. Mr. Rabideau's report concluded: ". . . based upon the proposed design criteria, in our opinion, this project does not represent a random, unnecessary, or undesirable disturbance to the freshwater wetlands on the property." Id. Angelo Raimondi, the designer of the ISDS that would be used on the property and an expert soil evaluator, testified that the planned system[8] was the most technologically advanced system, the most compact and efficient system, and that the system "went above and beyond what was required in order to mitigate any impact on the brook and the wetlands." Tr. at 28-29. There was no expert testimony at the hearing suggesting that the Martinellis' plan would create clean water problems or otherwise have an adverse effect on the environment.[9] In short, there was no testimony or other evidence submitted to the Zoning Board that would support, with substantial evidence, a finding that the Martinellis' plan would have an adverse environmental impact. *Page 18 
 3. The Board's Additional Concerns
The Board articulated additional concerns in its decision regarding the Martinellis' application. It expressed concern that if a vehicle left the road it could damage the leaching system. However, the evidence of record established that the roadside was wooded, and the DEM permit held by the Martinellis required that the area between the roadside and the perimeter of the system be left undisturbed as a permanent buffer.DEM Permit at 2-3. The record does not support a concern about vehicles leaving the road and damaging the system.
In its decision, the Board also expressed concern with the potential failure of the ISDS and the problems that would result.[10] However, there is no evidence of record that system failure is a practical concern. In fact, Angelo Raimondi's testimony that the system would be subject to ongoing maintenance checks and would even have an alarm to warn the owners in the event of malfunction suggests that system failure is a remote possibility.
The Board also expressed concern about the septic system's distance from neighboring wells, stating that "a 100-foot distance [from neighboring property] is maintained so that a neighbor's well, or a future well location, will be safe from pollution." However, the record discloses that the neighboring property is already developed, that the proposed septic system is a safe distance from current wells, and that there are no planned wells within 200 feet of the system.
Additionally, the Board worried that placing the septic system 95 feet from the river would compromise a natural area along Turkey Meadow Brook. It stated that "[p]onds, streams, and wetlands are essential to the character of a rural town. This is true for both aesthetic reasons, for protection of wildlife and for the quality of life of the residents." Decision at 2. However, *Page 19 
the relevant evidence of record establishes that the Martinellis' plan would not have an adverse impact on wildlife populations, the aesthetic or recreational value of Turkey Meadow Brook, or the water quality of Turkey Meadow Brook. See Narrative of Biological Impact; Tr. at 18-25 (Testimony of Mr. Rabideau). There was no evidence of record rebutting the Martinellis' expert witnesses; none of them suggested adverse impact on the brook, or any other adverse environmental results, from the Martinellis' proposed development.
In sum, the factual findings and conclusions made by the Zoning Board are not supported by the expert testimony and other evidence submitted at the hearing. A zoning board is not empowered to dismiss uncontradicted expert testimony. See Salve Regina College v. Zoning Bd.of Review of City of Newport, 594 A.2d 878 (R.I. 1991) ("since the board had no other expert testimony or evidence upon which it could base its findings and conclusions, we hold that the trial justice erred in finding that the evidence was sufficient to support the board's determination"). Additionally, "a [zoning] board is presumed to possess special knowledge concerning local conditions as they relate to zoning. A decision reached by the board pursuant to such special knowledge will not be upheld, however, unless the record reveals the underlying facts or circumstances the board derived from its knowledge of the area."DeStefano, 405 A.2d at 1171 (citing Perron v. Zoning Bd. of Review,117 R.I. 571, 576, 369 A.2d 638, 641 (1977)).
In this case, there was no expert opinion in opposition to the Martinellis' proposed plan. The expert testimony on the record is not only contrary to the Zoning Board's decision, but also establishes the necessary criteria to grant the variances sought. The Zoning Board did not purport to rely on any of its members' special knowledge of the area. There is an absence of evidence of record, therefore, to support the Zoning Board's conclusions. Accordingly, this Court finds that the Board's decision was not supported by substantial evidence. *Page 20 
 IV. The Petitioners Are Entitled To the Dimensional Variances Sought
There is no question that "the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area." R.I. Gen Laws § 45-24-41(c)(1). The appellant's request for dimensional variances arises primarily from the dimensions of the lot and the fact that the subject property is bisected by Turkey Meadow Brook.
Likewise, there is no evidence "[t]hat the hardship is . . . the result of any prior action of the applicant and . . . result[s] primarily from the desire of the applicant to realize greater financial gain." R.I. Gen. Laws § 45-24-41(c)(2). The subject lot is a sub-standard lot of record, and without the requested relief, the Martinellis will not be able to build their proposed single family home. Although the Zoning Board concluded that ". . . the fact that it may be more profitable to the applicant [to build a home on the property] is not grounds for a variance," nowhere in the record is it suggested that the Martinellis' desire to build a house on the lot was driven primarily by a desire for "profit." The Zoning Board does not explain what it meant by this statement in its decision nor does it actually reference any facts indicating how the Martinellis would profit from building a home on their property. Finding no evidence of record to support such a finding, this Court finds that the hardship was not a result of prior action by the appellant or from a desire to realize greater financial gain.
The next criterion that the Martinellis had to satisfy to receive its requested variances was that "the granting of the requested variances will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is base." R.I. Gen Laws § 45-24-41(c)(3). As discussed above, the relevant expert testimony of record showed that the Martinellis' plan would not alter the *Page 21 
general character of the surrounding area. The single lay witness who testified at the hearing did not object to the Martinellis' proposal on aesthetic or other grounds relevant to whether the plan would alter the character of the area. The Board did not find that a single family home would be out of character for the area; its concerns arose from the potential environmental effect of the proposed development. The record, however, establishes that the development would not have an adverse impact on the natural environment of the area. Thus, this Court finds that granting the variance would not alter the general character of the surrounding area.
It also appears from the record that the Martinellis established "[t]hat the relief to be granted is the least relief necessary." R.I. Gen. Laws § 45-24-41(c)(4). The record establishes that the Martinellis' plan placed the ISDS at the optimal place on the subject property to minimize any environmental impact and that the variances requested were necessary to place the system in this optimal location. Nowhere on the record is it suggested that the Martinellis were asking for more relief than was necessary to pursue the permitted use of a single family residence and ISDS. Indeed, Mr. DeGregorio testified and submitted a report that building a house smaller than the Martinellis' planned 32'x26' home would be out-of-step with the surrounding neighborhood and "would ultimately affect property values in a negative fashion."DeGregorio Report at 2; see also Tr. at 41 ("anything less than a 26 foot width [sic] house would be substandard for the area.").
On appeal, the Zoning Board suggests that perhaps placing the ISDS on the western side of the property, i.e., the "other" side of Turkey Meadow Brook, would allow more distance from the brook and thus would require less dimensional relief. However, the record establishes that developing the western side of the property is not a possibility because the Martinellis would have been unable to get the necessary approvals to bridge, or otherwise alter, the brook and that *Page 22 
the Martinellis' proposed plan had a lesser environmental impact.See Tr. at 47-48 (testimony of the Martinellis' attorney that DEM was opposed to developing the "other" side of the brook); Tr. at 48 (Scott Rabideau testified that DEM was opposed to crossing the brook because doing so would result in a greater impact on the brook and wildlife than the Martinellis' plan). This Court thus finds, based on the evidence of record, that the dimensional relief requested was the least relief necessary.
Finally, it would amount to more than a mere inconvenience if the requested relief were not granted. R.I. Gen. Laws § 45-24-41(d)(2). Without the requested variance, the Martinellis would be unable to build their home on the property. The inability to pursue a permitted use for one's property due to setback requirements certainly qualifies as "more than a mere inconvenience." See, e.g., Gara Realty, Inc. v. Zoning Bd.of Review South Kingstown, 523 A.2d 855, 858 (R.I. 1987) (finding that, as a matter of law, it was more than a mere inconvenience where enforcement of setback requirements would prevent a party from pursuing the permitted use of building a single family residence).
In sum, this Court finds that the Martinellis established all the criteria necessary for obtaining their requested dimensional variances under R.I. Gen. Laws § 45-24-41 (c) (d). Accordingly, this Court finds that the Martinellis were entitled to the dimensional variances that they requested and that the Zoning Board erred in denying those variances.
 V. Appellant's Application for Reasonable LitigationExpenses
The appellant has requested permission to apply for reasonable litigation expenses pursuant to the Equal Access to Justice Act, R.I. Gen. Laws § 42-92-1 et seq. The Act provides, in pertinent part, as follows: *Page 23 
 (a) Whenever the agency conducts an adjudicatory proceeding subject to this chapter, the adjudicative officer shall award to a prevailing party reasonable litigation expenses incurred by the party in connection with that proceeding. The adjudicative officer will not award fees or expenses if he or she finds that the agency was substantially justified in actions leading to the proceedings and in the proceeding itself. The adjudicative officer may, at his or her discretion, deny fees or expenses if special circumstances make an award unjust. The award shall be made at the conclusion of any adjudicatory proceeding, including, but not limited to, conclusions by a decision, an informal disposition, or termination of the proceeding by the agency. The decision of the adjudicatory officer under this chapter shall be made a part of the record and shall include written findings and conclusions. No other agency official may review the award.
 (b) If a court reviews the underlying decision of the adversary adjudication, an award for fees and other expenses shall be made by that court in accordance with the provisions of this chapter.
The Act further provides that "individuals and small businesses should be, in all fairness, subject to state and/or municipal reimbursement of reasonable litigation expenses when the individual or small business prevails in contesting an agency action [or adjudicatory proceeding], which was without substantial justification." R.I. Gen. Laws §§42-92-1(b), 42-92-3. Under the Act, litigation expenses will not be awarded "if the agency was substantially justified in actions leading to the proceedings and to the proceeding itself," and may be denied "if special circumstances make an award unjust." R.I. Gen. Laws § 42-92-3.
A threshold matter is whether the Zoning Board is an agency within the meaning of the Act. The Act defines "agency" to include "any state and/or municipal board, commission, council, department, or officer . . . authorized by law to make rules or to determine contested cases, to bring any action at law or in equity, including, but not limited to, injunctive and other relief, or to initiate criminal proceedings." R.I. Gen. Laws § 42-92-2 (3). Our Supreme Court has clearly recognized that municipal zoning boards determine contested cases. See Hillside *Page 24 Associates v. Stravato, 642 A.2d 664, 669 (R.I. 1994). Because the Zoning Board is a municipal board that determines contested cases, this Court finds that it is an agency within the meaning of the Act.Accord Smith v. Warwick Zoning Bd. of Review, 1997 WL 1526539 at *2 (R.I.Super. 1997).
Another threshold question is whether the Zoning Board's decision to deny the requested variances was an "adjudicatory proceeding." Under the Act, an "`adjudicatory proceeding means any proceeding conducted by or on behalf of the state administratively or quasi-judicially which may result in the loss of benefits, the imposition of a fine, the adjustment of a tax or assessment, the denial, suspension, or revocation of a license or permit, or which may result in the compulsion or restriction of the activities of a party." R.I. Gen. Laws § 42-92-2 (2). A zoning board decision on a dimensional variance application results in either a permit to engage in a permitted use of one's land or a restriction on doing so. Thus, this Court finds that the Zoning Board's decision was an adjudicatory proceeding within the meaning of the Act.
Under the Act, an award of litigation expenses only may be granted if the Zoning Board's decision, as well as its position in these proceedings, was without "substantial justification." "`Substantial justification' means that that the initial position of the agency, as well as [its] position in the proceedings, has a reasonable basis in law and fact." R.I. Gen. Laws § 42-92-3 (7). Our Supreme Court has stated that the substantial justification test requires the agency to "show not merely that its position was marginally reasonable; its position must be clearly reasonable, well founded in law and fact, solid though not necessarily correct." Taft v. Pare, 536 A.2d 888, 893 (R.I. 1988) (internal quotations omitted) (quoting United States v. 1,378.65 Acresof Land, 794 F.2d 1313,1318 (8th Cir. 1986)). *Page 25 
The Zoning Board argues on appeal that the appellant is not entitled to litigation expenses under the Act because "[t]here is no suggestion, and absolutely no evidence, to support the contention that the Board was acting egregiously or set about to willfully deny the Petitioner's application. The Board's decision was rendered based on consideration of the facts before it and application of those facts to the law." The Zoning Board thus misconstrues the standards under the Equal Access to Justice Act: the issue is not whether the Zoning Board acted egregiously or willfully against the appellant; the issue is whether the Zoning Board's position is "clearly reasonable, well founded in law and fact, though not necessarily correct." Taft, 536 A.2d at 893; Krikorian v.Rhode Island Dep't of Human Services, 606 A.2d 671, 675 (R.I. 1992) (citing Taft v. Pare)).
As to whether the Zoning Board's position was well founded in law, this Court notes that it has continued to rely on erroneous legal standards in its appeal. Significantly, in its initial memorandum to this Court on appeal, the Zoning Board cited Lischio, 818 A.2d at 693, for the proposition that "when seeking a dimensional variance, an applicant bears the burden of demonstrating . . . that there are no reasonable alternatives that allow the applicant to enjoy a legally permitted use of his or her property."[11] The Zoning Board misread the Lischio decision; as previously explained, applicants for dimensional variances need only show that it would be more than a mere inconvenience if the variance is not granted.
The Zoning Board also has continued to rely on an erroneous legal standard regarding the existence of other permitted uses. On appeal, it states that "[t]he question for consideration is . . . whether, or to what extent, there are other permitted uses to which the petitioner can avail *Page 26 
itself."[12] As also discussed previously, however, the existence of other permitted uses is not a proper factor in a Zoning Board's decision as to whether to grant a dimensional variance where the applicant seeks to pursue a permitted use under the zoning ordinance. This Court concludes that the Zoning Board's position is not well grounded in law because it relies on erroneous legal standards, both in its initial decision and on appeal, that are material to a proper determination of the issues presented in the case.
In addition, the Zoning Board failed to adopt a position well grounded in fact. Significantly, on appeal, the Zoning Board does not cite evidence of record to support its contention that its decision is supported by substantial evidence. It merely reiterates its conclusions, but cites no evidence from the record to support those conclusions. In a rare reference to the record in its Sur-reply Memorandum, the Zoning Board cites the testimony of a lay witness at the hearing that the location of the proposed ISDS is "awfully wet." Resp'ts' Sur-reply Mem. at 2,4. However, the Zoning Board's decision was not based on any conclusions that the area was "too wet" for an ISDS. The Zoning Board's reference to the testimony of a lay witness to suggest that the area was "too wet" for an ISDS thus does not aid this Court in determining whether the findings of fact and conclusions in the Zoning Board's decision were supported by substantial evidence.[13]
The Zoning Board even concedes a lack of evidence for its position ("Petitioner makes much ado about the lack of evidence of a material risk to public safety . . .") and suggests that no evidence of a risk to the environment is necessary when "[t]he risks to the watershed are part of *Page 27 
a common collective knowledge." Resp'ts' Sur-reply Mem. at 4. This Court, concludes, however, that the record fails to support a finding of risk to the environment from the proposed variances or for the proposition that common knowledge would dictate that such right exists. As such, the Zoning Board's decision was not well founded in fact.
In sum, this Court finds that neither the decision of the Zoning Board, nor its arguments on appeal, are well grounded in law and fact, and thus are without substantial justification. See Taft v. Pare,536 A.2d at 893. Because the Board was not substantially justified in its decision, the appellant may be entitled to an award of reasonable litigation expenses under the Equal Access to Justice Act.
This Court notes, however, that the appellant has not yet filed the affidavit evidence necessary to establish that it is a "party" eligible to recoup reasonable litigation expenses under R.I.G.L. § 42-92-2(4).See Reply Mem. of Cobble Hill at 12, n. 7 (outlining affidavit evidence that it intends to submit if this Court allows it to make application for reasonable litigation expenses). In addition, appellant has not yet quantified its request for reasonable litigation expenses. Presumably these matters remain unresolved because the appellant first wanted this Court to determine whether it may be entitled to such an award. If it intends to pursue a request for fees and expenses, therefore, the appellant is obligated to file, within ten (10) days of entry of judgment in this matter, the requisite affidavits to establish its status as an eligible "party" under R.I.G.L. § 42-92-2(4) and attorney's fee affidavits, attesting to the reasonableness of its request (including counsel's hourly rate, the number of hours expended by counsel and any claimed expenses incurred) and properly documenting, with contemporaneous time records, the amount of fees and expenses requested. Its request for fees and expenses must include proof of all amounts previously billed to and paid by appellant and/or its predecessor in interest. The Zoning *Page 28 
Board must file any response to any fee and expense request of appellant within ten (10) days of the filing of that request. All parties must engage in a good faith effort to resolve the remaining issues of fees and expenses prior to requesting any further hearing by this Court.
 Conclusion
Under R.I. Gen. Laws § 45-24-69(d), this Court may reverse or modify the decision of a zoning board if substantial rights of the appellants have been prejudiced because of findings, inferences, conclusions or decisions which are affected by error of law or clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record. The Foster Zoning Board's decision was affected by error of law because, when reviewing the Martinellis' request for variances, it failed to apply the "more than a mere inconvenience standard" required under R.I. Gen. laws § 45-24-41(d)(2), and its decision hinged in part upon whether other permitted uses may have been available to the Martinellis, in direct violation of R.I. Gen. Laws § 45-24-41. In addition, the Zoning Board's conclusions were not supported by the substantial evidence of record. This Court finds that the Martinellis did in fact establish all of the necessary criteria under R.I. Gen. Laws § 45-24-41(c) (d) to secure the dimensional variances for which they applied. Accordingly, the decision of the Zoning Board is reversed, and this matter is remanded to it for further proceedings consistent with this Decision. As the Zoning Board was not substantially justified when it denied the Martinellis' request for dimensional variances, the appellant may be entitled to an award of reasonable litigation expenses under the Equal Access to Justice Act, subject to further hearing.
Counsel shall confer and submit forthwith an agreed upon form of order and judgment that is consistent with this Decision.
[1] The Foster Town Clerk's Department, Office of Land Records, received the Decision for record on June 9, 2005.
[2] The Agricultural/Residential Zoning District:
 is characterized by a mixture of low density residential and farming uses with certain light industrial uses requiring special use permits. This district is designed to help preserve the rural character of the Town, to regulate the development of the Town so that the tax base will be adequate to support necessary public expenditures, to protect land now used for agricultural and forestry from haphazard encroachment and to safeguard the health, safety, and welfare of the residents of the District.
Town of Foster Zoning Ordinance, art. III, § 1.
[3] Article V, § 1 of the Foster Zoning Ordinance provides:
"Sub-Standard Lot Of Record
 * * *
 Where no adjacent land is in the same ownership so as to form a larger land parcel, a lot smaller than the minimum dimensions and area required by this Ordinance which was a lot of record on the effective date of this Ordinance may be used for a permitted use provided that such a lot shall have a minimum area of 10,000 square feet and a minimum width of one hundred feet (100 feet). All dimensional requirements of the district shall be complied with except that the side and rear requirements be reduced as necessary by the Zoning Board of Review in case of a lot with a width of less than one hundred fifty feet (150') or a depth of less than two hundred feet (200').
 Before a building permit may be issued on such a lot, it must be approved and certified, in writing, as a sub-standard lot of record by the Town's Building and Zoning Official."
[4] The Board began the conclusion section of its decision with the following explanation of the policy underpinnings of the Zoning Ordinance:
 The Town of Foster's requirements for location of sewage disposal systems are more stringent than the DEM's. The Town's requirements look to natural areas and aesthetic values not taken into account by the DEM and provide greater protection for water quality. The Town has no public water or sewer systems. It is important to give strict protection to well water quality.
 Requirements of distance from property lines are imposed to protect neighboring owners [sic] water sources. A 100-foot distance is maintained so that a neighbor's well, or a future well location, will be safe from pollution.
 The requirement of a 60-foot distance from road lines is imposed to protect the system from accidents when a vehicle leaves the road. It also protects passersby and neighbors from septic odors in case of failure of a system.
 The requirement of a 200-foot distance from a pond, stream, spring, or brook is two fold. One, to protect water quality; even the newest septic systems can fail and allow pollutants to enter the water source. The 200-foot separation gives an extra measure of protection in a Town which relies entirely on well water. Second, the town values its natural areas. Ponds, streams and wetlands are essential to the character of a rural town. This is true for both aesthetic reasons, for protection of wildlife and for the quality of life of the residents.
Decision at 2.
[5] It appears that the Zoning Board's application of the erroneous "no reasonable alternative" standard resulted from its reliance on the Foster Zoning Ordinance. Article VII, section 2 of the ordinance requires an applicant to establish, inter alia, that "the hardship that will be suffered by the owner of the subject property if the dimensional variance is not granted shall amount to more than a mere inconvenience,which shall mean that there is no reasonable alternative to enjoy alegally permitted beneficial use of one's property." (emphasis added). Thus it appears that the Foster Zoning Ordinance continues to reflect the pre-2002 language of R.I. Gen. Laws § 45-24-41(d)(2).
[6] Although the decision is not clear on this point, the Zoning Board noted that the reasons for the 200 foot setback required between a waterway and the septic system included "aesthetic reasons" and "protection of wildlife and quality of life of the residents" and that placing the leachfield 95 feet from the brook "would . . . compromise a natural area along Turkey Meadow Brook." Decision at 2.
[7] From the record, it appears that the neighborhood could best be characterized as rural single-family residential, but the Zoning Board's findings of fact are bereft as to what it determined the character of the area to be.
[8] The planned system was an RX3 Advantex pre-treatment system with a bottomless sand filter. Tr. at 28-30.
[9] The town Building/Zoning official, Robert J. Fallon, testified that "it's awfully wet," referring either to the lot in general or the specific proposed location for the septic system. Tr. at 8. However, he also testified that "[i]f you were going to put a house and a septic system in, this would be the best place [on the property] to put it." Tr. at 8-9. In any event, Mr. Fallon did not appear as an expert as to the environmental impact of the Martinellis' proposal. His brief testimony focused on his opinion that the site that that Martinellis' proposed was the best possible site on the property. Tr. at 8-9.
[10] The Board stated that the sixty foot distance from road lines "protects passersby and neighbors from septic odors in case of a failure of the system" and that the 200 foot distance from wetlands was intended to protect water quality and that "even the newest septic system can fail and allow pollutants to enter the water source." Decision at 2.
[11] Resp'ts' Mem. at 6. The Zoning Board subsequently corrected its position on this legal standard, without explicitly conceding its initial error, in its Sur-reply Memorandum. Resp'ts' Sur-reply Mem. at 4.
[12] Resp'ts' Sur-reply Mem. at 3.
[13] Regardless, this Court finds that the expert testimony that the proposed site of the ISDS is the most appropriate location for it and that it will have a de minimis impact on the environment, along with DEM approval of the plan, substantially outweighs the suggestion made by the Zoning Board on appeal, by referring to the lay testimony of Mr. Buckley, that the location was not proper for the ISDS.