HECTOR D. LAUDATI *et al. vs.* ZONING BOARD OF REVIEW OF THE TOWN OF BARRINGTON.

JUNE 3, 1960.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

PAOLINO, J. This is a petition for a writ of certiorari to review the decision of the zoning board of review of the town of Barrington denying the petitioners' application for a special exception or a variance under the zoning ordinance of that town to use certain land as a shopping center. Pursuant to the writ the board has certified the pertinent records to this court.

The petitioner Hector D. Laudati is the owner, and the other petitioner, Lowell Realty Company, a Rhode Island corporation, is the lessee of the land in question. It is located at 97-99 County road in an AA residential district and consists of a vacant parcel of land designated as lot No. 4 on assessors' plat No. 25. This parcel of land is shaped like a mallet and has a frontage of 260 feet on County road and a depth of approximately 390 feet. At about the center of its westerly boundary a segment of the land about 117 feet in width projects out in a westerly direction a distance of 277 feet. The entire parcel consists of an area of approximately 126,000 square feet.

The petitioners' land is located on the northerly side of County road. Its easterly boundary is about 200 feet west of the Barrington river. The land is abutted on its northerly boundary by a railroad track and right of way. On its easterly side it is bounded by town land upon which is

located the Barrington police station. Behind the station, which is a two-story brick building, are garages for the police cars and a parking lot. The area north of the parking lot is low and marshy. On its southerly side petitioners' land is bounded by County road, a heavily-traveled state highway, and on its westerly side it is bounded by residential property. The character of the immediate neighborhood is essentially residential, the properties therein consisting of one-family dwellings.

Section 42 of the zoning ordinance provides that each lot in an AA residence zone shall have a minimum width of 125 feet and a minimum area of 15,000 square feet with certain front, side and rear yard requirements. The only permitted uses in such zone are one-family detached dwellings, crop or tree farming, and accessory buildings. But sec. 42 also provides that a shopping center may be located in an AA residence zone as a special exception "If its location is first approved by the Board of Review as provided for in Sections 91 and 92." Section 42 A 2 (a), as amended March 12, 1956, provides: "When located and developed on a lot having an area of not less than 100,000 square feet and provided that a recommendation from the Planning Board shall be requested as to the location, site development, architectural treatment and ingress and egress facilities in addition to off-street loading for delivery vehicles and automobile parking which are incidental thereto as required in Section 24."

Section 92 of the ordinance vests discretionary power in the board to grant variances and special exceptions provided for in the ordinance "when in its judgment the public convenience and welfare will be substantially served, or the appropriate use of neighboring property will not be substantially or permanently injured * * *."

The petitioners desire to use their land for the erection of a shopping center containing facilities for a supermarket,

a variety chain store and a large parking area. Accordingly they filed an application with the board requesting a special exception under sec. 42 A 2 (a) of the ordinance or a variance under general laws 1938, chapter 342, §8 c, now G. L. 1956, §45-24-19 c.

The proposed structure would consist of a modern cinder block building measuring 210 feet by 130 feet with a stone front. It would contain two stores fronting on County road and set back from such road about 170 feet. The proposed parking area would be located between the front of the building and county road.

At the hearing before the board the petitioners presented the testimony of a real estate expert and two representatives of the company to which they had committed use of the land for a proposed shopping center. Their testimony in addition to that of the owner with respect to the topography and location of the land was in substance that it was vacant land three to five feet below street grade; that it was wet, low and subject to flooding from abnormally high tides, especially from hurricane tidal waves; that it had been seriously flooded twice in the past twenty years; that its location on a heavily-traveled highway in such close proximity to a railroad track and police station made the land undesirable for residential use; and that the general neighborhood was such that the natural trend of the area appeared to be toward development for commercial purposes.

The petitioners' witnesses further testified that the proposed use was in the public interest; that it would not adversely affect the value of surrounding properties or substantially or permanently injure the appropriate use of neighboring properties; that it would not adversely affect traffic conditions in the area; that it would mean additional tax revenue for the town and employment for its people; that an additional shopping center was needed in the area; and that there were instances of not strictly residential uses

in the immediate area, including doctors' offices, the railroad right of way and the police station.

In addition, petitioners' witnesses testified that the land in question could not be used for any purpose in its present condition; that it would have to be filled to an average depth of seven feet to bring it to six or seven feet above mean high water; that it would cost from $28,500 to $48,000 to make the land usable; that it was not economically feasible to expend such amount to develop the land for residential purposes; that this would be true even if petitioners were permitted to subdivide the land into seven lots ranging in area from 13,000 to 15,000 square feet; that in the circumstances the land could never be put to any productive use; and that petitioners would be deprived of all beneficial use of their land unless they were permitted to use it for commercial purposes.

Many persons appeared in opposition to the application. These included property owners in the immediate area, the chief of police, and other town officials. Some of the remonstrants were represented by counsel and others had signed petitions signifying their opposition. It appears from the evidence that the remonstrants objected primarily on the grounds that the proposed use would increase the traffic hazards on County road; that it would alter the character of the neighborhood and adversely affect property values therein; and that an additional shopping center was not needed for the convenience of the public, since adequate facilities of a similar nature were located only 1,200 feet distant from the land in question.

There is also in evidence a letter from the town planning board and one from the state traffic engineer disapproving the application on the ground that the proposed use would seriously and adversely affect traffic conditions on County road. The letter from the state traffic engineer states that the volume of traffic at the proposed location on County road is above capacity and the proposed use would create

a further potential traffic hazard for the large volume of traffic on that highway.

In addition a real estate expert testified for remonstrants. He corroborated the testimony of other remonstrants with respect to the adverse effect of the proposed use on neighboring property and on traffic conditions. He stated that in his opinion there was no need of an additional shopping center in the area. After describing the essentially residential character of the immediate neighborhood, he stated that in his opinion the presence of the railroad right of way had no appreciable adverse effect on property values in the area.

He also stated that although the land was not as desirable as other lots might be, and although it was probably the least desirable in the immediate area, he thought it could be used for residential purposes if it were improved with a limited amount of fill. He stated that many houses in Barrington are built on what was low, swampy land which had been improved by fill. He also stated that the amount of fill required would depend on the number of lots developed for residential uses and that, although it was not a studied opinion, he believed that if the land were divided into two lots it could be sold for $6,500. The tax stamps on the deed conveying the land to the petitioning owner indicate a purchase price of about $6,000.

Sometime after the hearing the board filed a decision denying the application. After noting therein that the application had been disapproved by the planning board, the board gave its reasons for such denial with respect to the request for a special exception and for a variance.

In denying the request for a special exception the board made express findings that County road is overtaxed with traffic with no relief in sight; that the area in question is essentially residential; that the neighboring properties have a higher than average value; that there are many children residing in the area; and that a very dangerous traffic haz-

ard already existing would be greatly aggravated by the proposed use. On the basis of such findings the board concluded that the proposed use would be extremely detrimental to the neighborhood and would substantially and permanently impair the value of neighboring properties and their use for residential purposes. It also concluded that the proposed use would impair the welfare and convenience of the citizens of the town in general, particularly affecting those living in the immediate neighborhood. In so concluding the board also took into consideration the fact that a shopping center was located within 1,200 feet of the land in question.

The petitioners contend that the decision denying the application as to the special exception is arbitrary and an abuse of discretion. The board found in effect that the proposed use would not serve the public convenience and welfare and that it would substantially or permanently injure the appropriate use of neighboring properties. These findings are supported by competent evidence and therefore are not arbitrary. It is true that the evidence on these issues is in direct conflict, but it is well settled that the question of the weight of the evidence was exclusively for the board. This court on certiorari in zoning cases involving review of a board's exercise of discretion ordinarily does not weigh the evidence. *Hazen* v. *Zoning Board of Review,* 90 R. I. 108, 111, 155 A.2d 333, 335. If there is some evidence to support the board's findings we will not disturb them. *Baggs* v. *Zoning Board of Review,* 79 R. I. 211, 215. Having made such findings, the board was without power to grant the special exception and its decision denying the same is therefore not an abuse of discretion. *Hazen* v. *Zoning Board of Review, supra.*

As to the request for a variance, the board found that the petitioning owner failed to prove a case of hardship and denied relief on that ground. The petitioners contend that such denial in effect amounts to confiscation without com-

pensation in violation of their constitutional rights. They claim that the peculiar and special conditions involved in the topography and location of their land is such that it is not economically feasible to develop it for residential uses. They argue that the cost of filling and preparing the land for residential purposes is as a practical matter economically prohibitive; that the only use they can make of it is for commercial purposes; and that to restrict the land to the uses permitted by the ordinance would deprive them of all beneficial use thereof and would therefore cause unnecessary hardship.

The meaning of the phrase "unnecessary hardship" as it is used in the zoning law is now well settled in this state. The words have acquired a technical meaning. Unnecessary hardship within the contemplation of our statute arises where it is proved that a literal application of the terms of the ordinance completely deprives an owner of all beneficial use of his land. *Hazen* v. *Zoning Board of Review, supra.* As was said in *Heffernan* v. *Zoning Board of Review,* 50 R. I. 26, at page 32, "when in the circumstances of a particular case the application of an ordinance completely deprived a landowner of all beneficial use of his land, that condition presented such elements of special and great hardship, as would require that a zoning board should exercise its discretion to prevent complete confiscation of the applicant's land without compensation."

An applicant for a variance has the burden of proving to the satisfaction of the board the existence of such hardship. *Winters* v. *Zoning Board of Review,* 80 R. I. 275, 279. On this issue petitioners' testimony is that, because of its proximity to the railroad track, the police station, the heavily-traveled state highway and the river, their land is unsuitable for residential uses and that the cost of preparing the land for such uses was so high that they would not be able to derive any profitable use therefrom if they were compelled to develop it in that manner. They also

presented testimony to the effect that only a commercial use would justify the cost necessary to develop the land.

It is clear from the board's decision that it gave no weight to such testimony. It is equally clear that it accepted the testimony of the remonstrants' expert that the land in question could be developed for residential purposes with limited amounts of fill and at lower costs. It may be true that petitioners would derive more profit from such land if it were used for commercial purposes. But the fact that the use permitted under an ordinance is not the most profitable is not of itself proof that an applicant would suffer unnecessary hardship by a literal enforcement thereof. *Strauss* v. *Zoning Board of Review,* 72 R. I. 107, 112. It is well settled in this state that an application for a variance will be denied where the only evidence in support thereof is that the provisions of the zoning ordinance when applied to the property in question will result in a less profitable use thereof. *Berard* v. *Zoning Board of Review,* 87 R. I. 244, 139 A.2d 867.

The true test is whether a literal enforcement of the ordinance would result in a complete deprivation of all beneficial use of one's land. In the case at bar there is a direct conflict on this issue. There is some legal evidence in the record upon which the board's decision may reasonably rest. The question of the preponderance thereof was for the board to pass upon. On certiorari in zoning proceedings this court ordinarily does not weigh the evidence but merely reviews the record to determine whether there is legal evidence to support the board's decision or whether such decision was arbitrary and an abuse of discretion. *Madden* v. *Zoning Board of Review,* 89 R. I. 131, 151 A.2d 681. If there is some evidence in the record upon which the board's decision may reasonably rest it cannot be said that it abused its discretion. *Costantino* v. *Zoning Board of Review,* 74 R. I. 316, 322. Since there was legal evidence in the record upon which the board could reasonably base

its decision denying the variance we cannot say that it constituted an abuse of discretion.

The petitioners' contention that the case at bar is controlled by our decision in *Thomas* v. *Zoning Board of Review*, 84 R. I. 330, is without merit.

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, and the records in the case which have been certified to this court are ordered sent back to the respondent board.

### ON MOTION FOR REARGUMENT.

#### JUNE 24, 1960.

PER CURIAM. After our opinion in the above case was filed, the petitioners asked and received permission to present a motion for leave to reargue. Pursuant thereto they have filed such a motion, stating therein certain reasons on which they base their contention that justice requires a reargument of the case.

We have carefully considered those reasons and we are of the opinion that they suggest nothing which in the circumstances warrants a reargument.

Motion denied.

*Alfred H. Joslin, Hector D. Laudati,* for petitioners.

*Bernard R. Pollock,* Town Solicitor, Barrington, *Adler & Pollock, Edward A. Lewis,* Providence, for respondent.

*Edwards & Angell, Gerald W. Harrington,* amicus curiae.