DECISION
Plaintiff Steven Iadevaia ("Plaintiff") filed a motion for reconsideration of this Court's April 19, 2010 Decision (the "Decision"), which affirmed the Town of Scituate Zoning Board of Review's Decision ("Zoning Board's Decision") to deny Plaintiff a building permit and Dimensional Variance. Plaintiff seeks a reconsideration of the Court's Decision pursuant to Rule 60(b) (1) of the Superior Court Rules of Civil Procedure.
 I FACTS AND TRAVEL
The Plaintiff is the owner of 9.09 acres of real estate located just east of Chopmist Hill Road in Scituate, Rhode Island. On October 28, 2008 a Scituate Building Official denied Plaintiff's request for a building permit. Plaintiff then appealed the Building Official's denial to the Scituate Zoning Board which held a hearing on January 27, 2009. On February 27, 2009, the Scituate Zoning Board issued its findings and written decision. The Scituate Zoning Board made the following pertinent findings of fact in their decision:
 "1. The Town of Scituate Zoning Ordinance was approved on December 30, 1965 and included the written ordinance and the plat maps as of that date. The subject property was depicted as a single, nine-acre lot in those plat maps.
 2. On October 21, 1971 Joseph A. and Victoria D. Iadevaia, husband and wife, purchased a landlocked piece of land consisting *Page 2 
of 9.09 acres. (Joseph Victoria Iadevaia are the Applicant's parents and predecessors-in-title.)
 3. On October 25, 1983 Serafino F. and Anna E. Raponi requested a Dimensional Variance to sell a 50' strip of land to Applicant. The strip of land would be from Chopmist Hill Road to Applicant's land. Applicant's testimony at this hearing was this 50' strip of land was to access his 9.09 acre landlocked piece of land.
 4. On June 21, 2006 and again on September 19, 2006, the Applicant appeared before the Plan Commission and requested that a subdivision of his 9.09 acre parcel into two parcels. The resulting subdivision created a landlocked lot, which is the subject of Case # 1040 and 1041.
 5. On August 26, 2008, the Applicant requested a Dimensional Variance for lot width and a Dimensional Variance for building height; the Applicant withdrew his application without prejudice following a hearing.
 6. On October 21, 2008, the Applicant submitted plans and a building permit application to Mr. Provonsil for approval for the construction of a single-family home on the subject parcel.
 7. Mr. Provonsil denied Applicant's request for a Building Permit in October 28, 2008 correspondence to Applicant.
 8. In Case #1040, Applicant sought an appeal of Mr. Provonsil's denial of a building permit. In Case # 1041, Applicant sought Dimensional Variances for Lot Width and Building Height.
 9. Applicant requested, in essence, approval to construct a single-family home on a landlocked lot in the Town of Scituate. Applicant submitted a proposed easement and maintenance agreement for the subject property. During the proceedings, Applicant was represented by counsel. . . .
 10. Attorney . . . presented the Applicant's case asserting that the Applicant sought to use the property as a single-family residence, a use permitted by right. Applicant also set forth a challenge to the Town's definition of lot width, asserting that the subject property meets the definition. The Applicant, through counsel, argued that the Ordinance does not require lot frontage, nor does it mandate frontage. Applicant asserted that the Ordinance does mandate "lot width" and argued that the Applicant met the definition of lot width.
 11. Mr. Provonsil responded . . . that he denied Applicant's request for a building permit on three (3) additional grounds: 1) Lack of a driveway permit application (not likely an issue under the Board's jurisdiction); 2) No legal means of access to the subject property was submitted; and 3) The subject parcel has no street frontage, and is therefore ineligible for a building permit under Article IV-Section 3 of the Zoning Ordinance. *Page 3 
 12. No one spoke for or against the application (either the appeal or the application for variance) during the public comment portion of the hearing." (Dec. at 1-3.)
Additionally, the Administrative record contains the deeds of the property dating back to 1929. Plaintiff acquired the property from his parents, Joseph and Victoria Iadevaia in February 26, 1982, pursuant to a deed that described the property as:
 "A certain lot or tract of woodland situated in said Town of Scituate and State of Rhode Island, and lying easterly of the Chopmist Hill Road, so-called, and is bounded and described as follows:-Northerly by land formerly of Harley Phillips, but now or lately of Serafino P. Raponi et ux; Easterly by land formerly of James Aldrich, but now or lately of Rhode Island Episcopal Convention The Diocese of Rhode Island; Southerly by land formerly of Russell Arnold, but now or lately of Rosciti Construction Inc.; and Westerly by land formerly of Frank A. Capwell et ux, but now or lately of Nick DelVicario et ux, and contains about nine (9) acres of land.
 However otherwise bounded and described, said lot is comprised of those two certain lots of land on the easterly side of Chopmist Hill Road as are numbered 1 (one) and 2 (two) in the Division of the Estate of Ezekiel Bishop, late of the Town of Scituate, deceased, and recorded in Scituate Land Records in Plat Book 1 at page 19.
 Being the same premises conveyed to these grantors by deed from Vesta M. Fenner, dated October 1971, second parcel, and recorded in the Land Records of said Town of Scituate in Book 81 at page 247." (R. Ex. 3.)
The complete facts and travel of this case can be found in this Court's prior Decision, Iadevaia v. Town of Scituate Zoning Boardof Review, No. PC 09-1565, 2010 WL 1640336 (R.I. Super. Ct. Apr. 19, 2010). The Plaintiff now moves for this Court to reconsider its Decision on the grounds that the Court erred as a matter of law in affirming the Zoning Board's Decision. *Page 4 
 II STANDARD OF REVIEW
The Rhode Island Supreme Court has held that the Superior Court Rules of Civil Procedure, consistent with the nature of an appellate proceeding, apply to zoning board appeals. Carbone v.Planning Bd. of Appeal of S. Kingston,702 A.2d 386, 388-89 (R.I. 1997) (In noting the consistency between zoning board appeals and civil actions, our Supreme Court held that "[t]he rules of civil procedure insofar as applicable, shall govern the review proceedings"); see generally Astors'Beechwood v. People Coal Co., 659 A.2d 1109, 1114 (R.I. 1995).
The Rhode Island Superior Court Rules of Civil Procedure, similar to the Federal Rules of Civil Procedure, do not specifically provide for motions to reconsider. School Comm. of City of Cranston v.Bergin-Andrews, 983 A.2d 629, 649 (R.I. 2009). However, our Supreme Court applies a liberal interpretation of the rules, and "look[s] to substance, not labels." Sarni v. Melocarro,113 R.I. 630, 636, 324 A.2d 649, 651 (1974). It is well settled that a motion to reconsider should be treated as a motion to vacate under Super. R. Civ. P. 60(b). Bergin-Andrews, 984 A.2d at 649 (citing Keystone ElevatorCo. v. Johnson Wales Univ., 850 A.2d 912, 916 (R.I. 2004)). Rule 60(b) provides that under certain circumstances "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from final judgment, order, or proceeding. . . ." Super. R. Civ. P. 60(b). A motion to vacate under Rule 60(b) "is addressed to the trial justice's sound judicial discretion and `will not be disturbed on appeal, absent a showing of abuse of discretion.'" Keystone Elevator Co.,850 A.2d at 916 (quoting CrystalRest. Mgmt. Corp. v. Calcagni, 732 A.2d 706, 710 (R.I. 1999)).
However, Rule 60(b) is not "a vehicle for the judge to reconsider the previous judgments in light of later-discovered legal authority that could have and should have been presented to the *Page 5 
court before the original judgment entered." Jackson v. MedicalCoaches, 734 A.2d 502, 505 (R.I. 1999) (citations omitted). It does not authorize "a motion merely for reconsideration of a legal issue . . . where the motion is nothing more than a request that the [trial] court change its mind.'" Jackson,734 A.2d at 507 n. 8 (citing United States v. Williams,674 F.2d 310, 312-13 (4th Cir. 1982)); see alsoCashner v. Freedom Stores, Inc.,98 F.3d 572, 577 (10th Cir. 1996) (noting that Rule 60(b) is not intended "to allow a party merely to reargue an issue previously addressed by the court when the reargument merely advances new arguments or supporting facts which were available for presentation at the time of the original argument"). Furthermore, "a justice cannot correct a prior error of law pursuant to a Rule 60(b) motion after allowing the respective deadlines for amending and appealing a judgment to pass." Jackson, 734 A.2d at 507 n. 8.
Our Supreme Court has addressed the issue of the Superior Court's power to reconsider decisions rendered after a nonjury trial in a civil matter. Corrado v. Providence Redevelopment Agency,110 R.I. 549, 294 A.2d 387 (1972). In Corrado, our Supreme Court held that the trial court could review its own decision only if it found a manifest error of law in the judgment entered or if there was newly discovered evidence which was unavailable at the original trial and sufficiently important to warrant a new trial.Id. at 554-55. The Court defined a manifest error of law as, "one that is apparent, blatant, conspicuous, clearly evidence, and easily discernible from a reading of the judgment document itself."American Federation of Teachers Local 2012 v. Rhode Island Boardof Regents for Education, 477 A.2d 104, 106 (R.I. 1984). *Page 6 
 III ANALYSIS
Plaintiff moves this Court to reconsider and vacate its prior Decision. The Plaintiff contends the (1) the Zoning Board never produced the Town of Scituate Zoning Map (the "Zoning Map") it relied on at any stage of the proceedings; (2) even if the Zoning Map were produced, the Zoning Map did not create a subdivision or merger of Plaintiffs independent, legally-recognized lots; and (3) the Zoning Board's denial of Plaintiff s Zoning Application (the "Zoing Application") denied him all beneficial use of the subject property. Furthermore, Plaintiff alleges that this Court made critical errors in its factual findings that on their face, prompt this Motion for Reconsideration. Plaintiff contends that: (1) that at no point did he "admit" he owned only one lot (2) Plaintiffs property has always contained two lots and at no point, ever, has Plaintiffs property been lawfully reduced to one lot, and (3) this Court incorrectly relied on an existing zoning map for the proposition that Iadevaia's lots merged.
 A The Zoning Map
Plaintiff argues that the Zoning Board failed to produce the Zoning Map at any stage of the dispute. Specifically, Plaintiff argues that this Court went beyond the evidence in the record when it relied on the Zoning Map. Furthermore, Plaintiff alleges that the Zoning Map in question does not even exist. In Plaintiffs view, the Zoning Board and this Court incorrectly relied on a piece of evidence that was never produced and, furthermore, never existed.
The Zoning Act defines "zoning maps" as "the map or maps which are a part of the zoning ordinance and which delineate the boundaries of all mapped zoning districts within the *Page 7 
physical boundary of the city or town." G.L. 1956 § 45-24-41(66). The Town of Scituate Zoning Ordinance, adopted on December 30, 1965, states in relevant part that:
 "For the purpose of this ordinance, the Town of Scituate is hereby divided into eight (8) zoning districts as follows: . . . The boundaries of such districts are hereby established as shown on a map entitled "Scituate Zoning Map" filed at the office of the Town Clerk of the Town of Scituate. Such map is hereby adopted and made part of this ordinance." (Ord. of 1-8-04.)
The map filed with the Office of the Town Clerk of the Town of Scituate at the time of the implementation of the Town of Scituate Zoning Ordinance in 1965 was the Tax Assessor's Map. The Zoning Board noted this fact in its minutes, stating in part that "[w]hen the Town Ordinance was written; out of the Ordinance was [sic] the plat maps. The plat maps showed one lot and the ordinance became the rule as of that date." (R. Ex. 7.) Plaintiff's allegation that this Court committed a critical error in its factual findings when it relied on the zoning map is without merit. It is well settled that both a zoning board and this Court may take notice of an ordinance without its being placed into evidence. SeeWeaver v. United Congregational Church,120 R.I. 419, 423, 388 A.2d 11, 13 (R.I. 1978) ("The . . . Zoning Ordinance itself is not in the record of this case, but the parties have provided us with copies of those portions which are relevant to the present petition. Since the board itself could have taken notice of the ordinance without its being placed in evidence, we can do so ourselves[]"). When the Zoning Board held its hearing, it correctly relied on, and introduced into evidence, four portions of the Scituate Zoning Map, which was in effect in 1965 at the time of the adoption of the Ordinance. (R. Ex. 7, 22, 23.)
While the Tax Assessor's Map and the Scituate Zoning Map have separate names, and are used for different purposes, they are identical documents. See id. This is due to the fact the Tax Assessor's Map was implemented as the Scituate Zoning Map in 1965 when the Scituate Zoning Ordinance was adopted. Id. It is clear from the record that the Zoning Map was *Page 8 
produced and relied upon by the Board in its deliberations and in consideration of the Zoning Board's Decision. See
Zoning Board's Dec. at 1. The Zoning Board noted that on the date the Zoning Map was enacted pursuant to the Zoning Ordinance, "the subject property was depicted as a single, nine-acre lot in those plat maps." (Zoning Board's Dec. at 1.) The mere fact that the Zoning Map considered by the Board was previously a "Tax Assessor's Map" has no bearing. These documents are identical. Therefore, this Court committed no error by considering the 1965 Scituate Zoning Map when rendering its Decision.
 B Subdivision or Merger
Plaintiff asserts that the Zoning Board failed to produce any evidence whatsoever that (a) Plaintiffs lots had merged and (b) that Plaintiff created his own hardship by appearing before the Planning Commission to confirm the independence of his two lots. Plaintiff also contends that he never admitted that he owned only one lot, and furthermore, that his property has always contained two lots. Plaintiff correctly notes that a zoning map may not legally subdivide, or merge, otherwise lawfully existing lots. SeeSan Filippo v. Bd. of Review of Middletown,188 A.2d 464, 466 (R.I. 1964) (tax assessor's plat maps not conclusive in determining lot configuration). In this instance, however, there is ample evidence on the record that supports the Zoning Board's finding that Plaintiff treated his property as one lot.
A reviewing court may not substitute its judgment for that of the board if it "can conscientiously find that the board's decision was supported by substantial evidence in the whole record." MillRealty Assocs. v. Crowe, 841 A.2d 668, 672 (R.I. 2004) (quoting Apostolou v. Genovesi,120 R.I. 501, 509, 388 A.2d 821, 825 (1978)). It is well settled that if there is some evidence to support the board's findings, [the Court] will not disturb them. May-Day Realty Corp. v. Board ofAppeals of Pawtucket, *Page 9 92 R.I. 442, 444, 169 A.2d 607, 608 (1961) (citing Laudati v.Zoning Bd. of Review of Barrington,91 R.I. 116, 161 A.2d 198 (1960)). Under this standard of review, it is clear that the Zoning Board's findings of fact regarding Plaintiffs treatment of his land are based on substantial evidence in the record. See May-Day Realty Corp.,92 R.I. at 444, 169 A.2d at 608. While a zoning map itself may not legally subdivide or merge a property, it may certainly be used as an administrative aid for officials in determining lot configuration. See id In this case, the Zoning Board obtained credible evidence on the Record in the form of the 1965 Zoning Map, the Deed received by the Plaintiff, the Plaintiffs own testimony before the Zoning Board in 1983, and the ownership history of the property to support its factual finding that Plaintiff believed he owned one lot prior to the 2006 Plan Commission proceedings. See Zoning Board's Dec. at 1, 7. These facts, in their totality, clearly provide competent evidence in the record to support the Zoning Board's Decision. SeeMay-Day Realty Corp., 92 R.I. at 444, 169 A.2d at 608. Notably, Plaintiffs contention that he did not acknowledge that he owned only one lot at a 1983 Zoning Board hearing is not supported by the minutes from that meeting. The Chairman at the Zoning Board asked Plaintiff how long he had owned his "lot," and Plaintiff himself responded that his parents gave "it" to him in 1982. The word "lot" — like the pronoun "it" Plaintiff used when responding to the Chairman's question — is singular. Additionally, the deeds of the property dating back to 1929, and the deed dated February 26, 1982 where the Plaintiff acquired the property from his parents; describe the property as a singular "lot" of land. (R. Ex. 3, 16.) These factors in their totality, legitimately raised a question for the Zoning Board with respect to whether Plaintiff treated his land one way before the zoning board, and then after getting zoning relief, proceeded to treat his land in an inconsistent manner. See Zoning Board's Dec. at 7. *Page 10 
Rhode Island law recognizes the principle of judicial estoppel.See D H Therapy Associates v. Murray,821 A.2d 691, 693-94 (R.I. 2003); see also Gross v.Glazier, 495 A.2d 672, 675 (R.I. 1985). "Because the rule is intended to prevent improper use of judicial machinery, . . . judicial estoppel is an equitable doctrine invoked by a court at its discretion." New Hampshire v. Maine,532 U.S. 742, 750 (2001) (internal citations omitted). "[J]udicial estoppel focuses on the relationship between the litigant and the judicial system as a whole," in order to promote truthfulness and fair dealing in court proceedings. D H Therapy,821 A.2d at 693. Courts may invoke their discretionary powers to find judicial estoppel where a "party seeking to assert an inconsistent position [from one previously advanced] would derive an unfair advantage . . . if not estopped." Id. The Court noted that "[w]e cannot allow a litigant who has taken advantage of evidence presented as truthful in one forum thereafter to challenge the veracity of that evidence for his added benefit. Having eaten his cake, defendant may not renounce its calories." Id. As stated in Carbone, the rules of civil procedure can be applicable in the review of an administrative proceeding. 702 A.2d at 388-89. Indeed, applying these principles, in Pascalides v. Zoning Bd. of Review of Cranston, our Supreme Court found the concept of judicial estoppel to apply to a zoning case. 97 R.I. 364, 197 A.2d 747 (1963) (Applicant could not claim his lot was two separate lots after having treated the land as one lot to previously obtain relief before the Zoning Board).
Plaintiff asserts that the Court's reliance on the Zoning Map merged his two lots as a matter of law. This is an incorrect interpretation of both the Zoning Board's and this Court's Decision. None of the evidence the Zoning Board relied on, including the Zoning Map, merged Plaintiff's lots as a matter of law. Rather, this evidence supported the Board's finding that the Plaintiff had treated his land in an inconsistent manner. The issue of merger was not a basis *Page 11 
upon which the Zoning Board or this Court rendered its Decision. In the Zoning Board's Decision, the Zoning Board noted that:
 "While the record of evidence is not clear as to whether or not the two smaller lots were merged by the Applicant or his predecessors in title, (there is no municipal merger ordinance/requirement), the Applicant clearly believed that he had a single 9.09 acre parcel in 1983 when he applied for Zoning relief to build his residence. The relief granted to Applicant in 1983 was based on the Applicant's testimony that he had a 9.09 acre woodland lot which was landlocked (hence the request for the 50' strip of land for access). Therefore, the issue of merger is not dispositive to the Board's decision." (Zoning Board Dec at 7.)
The facts on the record are clear. In 1983, Plaintiff requested relief from the Town of Scituate Zoning Ordinance and was granted permission (a variance) to access his 9.09 acre parcel in order to construct a home. The Town of Scituate Zoning Ordinance states in part that after December 30, 1965, all lots must conform to the provisions of the Ordinance. Article IV-Section 3 of the Ordinance states:
 "After the effective date of this ordinance (December 30, 1965), no land shall be used and no building structure or sign shall be used or erected unless it conforms to the provisions of this ordinance. Uses and structure, existing on the effective date of this ordinance (December 30, 1965), and used in a manner not conforming to this ordinance, shall be permitted to continue under the provisions of article IV of this ordinance. Structures which have not been built or completed on the effective date of this ordinance (December 30, 1965), but for which a building permit has been issued by the Town of Scituate prior to the effective date of this ordinance (December 30, 1965), for use in a manner not conforming to this ordinance, shall be permitted to continue under the provisions of article IV of this ordinance. (Ord. of 1-8-04).
At the time of the adoption of the Ordinance, the subject property was depicted in the Zoning Map as a single, nine-plus acre lot. In 1983, Plaintiff acquired the subject property from his parents. Thereafter, on October 25, 1983, neighbors Serafino F. and Anna E. Raponi requested a Dimensional Variance from the Board to sell a 50' strip of their adjoining land to Plaintiff. The *Page 12 
strip of land would run from Chopmist Hill Road to Plaintiff's landlocked parcel and would allow Plaintiff to gain access to the subject property to construct a single-family home. During the 1983 Board Hearing, Plaintiff represented his land as a single parcel. The deed showed one parcel of land, Plaintiff referenced the subject property as a single parcel, and the Zoning Maps indicated Plaintiff had a single lot. Therefore, Plaintiff's contention that his property has always contained two lots is irrelevant. Whether or not the 9.09 acre parcel actually consisted of one or two separate lots dating back to 1848, is of no important to the instant matter, because Plaintiff was granted relief as to the whole property, represented as a single lot (the entire 9.09 acre parcel) to use as a single family residence. See D HTherapy, 821 A.2d at 693.
Plaintiff then created a substandard lot (a self-created hardship) when he appeared before the Plan Commission in 2006 to request that the existing lot (AP 35, Lot 24) be divided ("administratively") into the improved lot and the unimproved lot.[1] When Plaintiff again came before the Zoning Board in 2009 for a Dimensional Variance, he was in essence requesting relief from the hardship he created in 2006 when he appeared before the Plan Commission. Relief *Page 13 
from a self-created hardship is not an appropriate or recognized basis for zoning relief. See Sciacca v. Caruso,769 A.2d 578 (R.I. 2001). As the Court noted in its Decision, these facts legitimately "raised a question for the Board that Iaedevaia owned one lot prior to 2006 and that he built a house on that lot, and that after 2006, he intended to build another house on that same land by subdividing the property." See Iadevaia, No. PC 09-1565, 2010 WL 1640336. The Zoning Board concluded that Plaintiff represented his land as one lot before the Zoning Board in 1983 when looking for a Dimensional Variance. After obtaining the zoning relief for a Dimensional Variance, Plaintiff then attempted to treat his land in an inconsistent manner by asserting the land always existed as two buildable lots. The enforcement provisions of the zoning laws prevent any attempt to circumvent the Ordinance.See Pascalides, 97 R.I. 364, 197 A.2d 747; seegenerally D H Therapy, 821 A.2d at 693. After having argued that the subject property consisted of one lot at prior Zoning Board Hearings, the Plaintiff is estopped from advancing the theory that the subject property had always existed as two lots.See id. Accordingly, the Plaintiff is now estopped from asserting that the Zoning Board should have found the subject property always consisted of two lots. See id. As such, Plaintiff has not offered any new evidence or shown a manifest error warranting this Court's vacating its original Decision.
 C Beneficial Use of the Property
For an applicant to obtain a Dimensional Variance, he or she must satisfy both § 45-24-41(c) and (d)(2) of Rhode Island General Law, which requires the applicant to show that the hardship caused by the Board's refusal to grant a variance amounts to "more than a mere inconvenience." See Lischio v. Zoning Bd. of ReviewNorth Kingstown, 818 A.2d 685, 691 (R.I. 2003). *Page 14 
Based on the Board's conclusions that the Appellants were unable to satisfy either § 45-24-41(c)(2) (that hardship was not self created) and (3) (that the variances would not impair the intent or purpose of the Zoning Ordinance or Comprehensive Plan) this Court need not address whether the Plaintiff's hardship amounted to "more than a mere inconvenience," which was similarly not addressed by the Board.See id.
 IV CONCLUSION
For the foregoing reasons, the Court declines to vacate its judgment. Counsel shall submit an appropriate order for entry.
[1] The Plan Commission granted Plaintiff the sub-division resulting in a landlocked lot that has no frontage. Article IV-Section 3 of the Scituate Zoning Ordinance provides in pertinent part:
 "Except for lots on recorded plats which have received final approval from the plan commission pursuant to the ordinance and rules and regulations governing and restricting the platting and other subdivision of land, no lot area shall be reduced below the dimensional requirements prescribed for the district in which the lot is located."
However, the term "lot width" is defined as "[t]he horizontal distance between the side lines of a lot measures at right angles to its depth along a straight line parallel to the front lot line at the minimum, front setback line." (Ord. Article IX. Definitions (45)). Additionally, the term "front lot line" is defined as "the lot line separating a lot from a street right of way." Id. at 43(a). Reading these provisions of the Scituate Zoning Ordinance in conjunction with one another, it is clear that a lot must possess frontage for development.See id. The Plan Commission's authority to re-draw the lot line was not an issue before the Zoning Board, or this Court. *Page 1